**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE PATRON-MONTANO,

Defendant-Appellant.

No. 99-6002

---

Appeal from the United States District Court
for the W. District of Oklahoma
(D.C. No. 98-CR-112-002)

---

Richard E. Stout, Edmond, Oklahoma, for Appellant.

Frank Michael Ringer, Assistant United States Attorney (Patrick M. Ryan, United States Attorney, Oklahoma City, Oklahoma, with him on the brief), for Appellee.

---

Before **EBEL, ANDERSON,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Appellant, Jose Patron-Montano, appeals the sentence he received for his role in a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1)

and 846. Patron-Montano pleaded guilty and sought a three-level decrease to his base offense level under the acceptance of responsibility provision found in § 3E1.1(b) of the United States Sentencing Guidelines ("U.S.S.G." or the "sentencing guidelines") and a two-level decrease under the "safety-valve" provisions of U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2. The government opposed both adjustments, contending that Patron-Montano was ineligible for either because he intentionally misidentified a co-conspirator. The district court concluded that Patron-Montano had lied about the involvement of a co-conspirator and thus could not demonstrate that he was entitled to the acceptance of responsibility or safety valve decreases. The district court overruled Patron-Montano's objections and sentenced him to ninety-seven months' incarceration. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms**.

## I.     Factual Background

Patron-Montano was the object of a drug investigation conducted by the Oklahoma City Police Department and the Drug Enforcement Agency. As part of this investigation, an undercover officer met with Patron-Montano and Norman Aguirre [1] on May 28, 1998. At this meeting, the undercover officer showed Patron-Montano and Aguirre $185,000 in cash and expressed an interest in

---

[1]This court notes that Aguirre's name is spelled "Aquirre" in several places in the record. We refer to him as "Aguirre" throughout this opinion.

purchasing ten kilograms of cocaine. Patron-Montano told the officer he was uncertain he could obtain ten kilos but believed he could obtain five kilos. Surveillance officers observed Patron-Montano and Aguirre leave the meeting, travel to a residence at 1413 Southwest 35th Street, use pay telephones at two businesses, travel to 2108 Southwest 66th Street, go to a restaurant, drive to a residence at 1549 Southwest 46th Street, use a pay telephone at a retail establishment, and finally arrive at the residence the two shared.

Later that day, Patron-Montano contacted a confidential source assisting the undercover officer and informed the source that he had obtained the five kilos of cocaine. Patron-Montano also expressed his desire that the transaction be conducted at his residence. The confidential source communicated this information to the undercover officer. The undercover officer, however, refused to meet at Patron-Montano's residence. A series of telephone calls ensued while the parties attempted to reach an agreement as to the location of the meeting. During one of these calls, Patron-Montano informed the undercover officer that the suppliers of the cocaine had arrived at his residence. Ultimately, however, the parties were unable to agree on a location to complete the sale of the cocaine. Patron-Montano eventually telephoned the undercover agent and informed him that the suppliers were angry and were leaving his residence.

During the course of the telephone conversations, surveillance officers

3

observed a vehicle arrive at Patron-Montano's residence. When the vehicle left, a marked police car followed it. A traffic stop was initiated and officers conducted a search of the vehicle. During the search, officers found a semi-automatic pistol, two cellular telephones, a pager, an address book, and 3993 grams of cocaine. The driver of the vehicle was identified as Modesto Sicairos and the passenger as Ramon Aguilar. After surveillance officers observed Patron-Montano and Aguirre leave their residence, officers also stopped their vehicle. The officers obtained consent to search the residence and found marijuana, cocaine residue, and a sawed-off shotgun.

A four-count indictment was returned against Patron-Montano, Sicairos, Aguilar, and Aguirre. Patron-Montano was charged in Count 1 of the indictment with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Patron-Montano was not named in any of the remaining three counts. Patron-Montano pleaded guilty to the offense charged and a Presentence Investigative Report ("PSR") was prepared prior to his sentencing. In the original PSR, Patron-Montano's total offense level was calculated at twenty-seven and his criminal history category at I. The calculation of the total offense level included a three-level decrease to Patron-Montano's base offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). The government objected to the three-level decrease and an

4

amended PSR was prepared. As amended, the PSR did not recommend a decrease in Patron-Montano's base offense level for acceptance of responsibility. Patron-Montano filed an objection to the PSR, contesting the lack of a decrease for acceptance of responsibility and also contesting the lack of a two-level decrease to the base offense level under the safety value provisions of U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2. [2]

Three witnesses were called at Patron-Montano's sentencing hearing. The probation officer who prepared the PSR testified that the sole basis for not recommending the acceptance of responsibility decrease in the amended PSR was the government's contention that Patron-Montano had been untruthful in his statements about the extent of his co-conspirators' involvement in the conspiracy. The probation officer further testified that he determined Patron-Montano was not eligible for the safety valve decrease based on the government's statement that Patron-Montano had not disclosed all information he knew relating to the conspiracy.

The second witness, the undercover officer, testified that Sicairos, Aguilar,

---

[2]The statutory mandatory minimum sentence in this case was less than the sentence calculated under the sentencing guidelines. If the statutory mandatory minimum sentence had been greater than the minimum sentence under the guidelines, the district court also would be relieved from imposing the statutory mandatory minimum if it had determined Patron-Montano met the five criteria set out in U.S.S.G. § 5C1.2. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

Aguirre, and Patron-Montano had given conflicting statements to investigators after their arrest. The officer testified that in his statement, Patron-Montano claimed he had obtained the cocaine from an individual named Ernesto. Specifically, Patron-Montano maintained that he went to Aguilar's residence to ask Aguilar if he knew anyone from whom he could obtain the cocaine and Aguilar reminded him of a potential supplier named Ernesto Garbonio. Patron-Montano then stated he contacted Garbonio who arranged to have Aguilar deliver the drugs to Patron-Montano. The officer testified that he checked computerized police records but was unable to locate the individual implicated by Patron-Montano. The officer also checked Patron-Montano's wallet but was unable to locate the telephone number for Garbonio that Patron-Montano claimed was in the wallet. The officer also testified that although Aguilar also implicated Garbonio in the conspiracy, no co-conspirator mentioned Garbonio's name until months after they were arrested. The officer testified that after considering all the statements given by Patron-Montano and his co-conspirators, he believed that Sicairos was the source of the cocaine and that Patron-Montano lied when he claimed to have contacted someone named Ernesto Garbonio.

Aguirre also testified at Patron-Montano's sentencing hearing. Aguirre testified that after he and Patron-Montano met with the undercover officer on the morning of May 28th, he drove Patron-Montano to Aguilar's residence. Aguirre

6

stated that Patron-Montano told Aguilar he needed some drugs and Aguilar told Patron-Montano he would call him later. Aguirre testified that Patron-Montano gave Aguilar his pager number and then he and Patron-Montano left. Aguirre further testified that Aguilar and Sicairos later arrived at the residence he shared with Patron-Montano and that they brought the cocaine with them. The undercover officer had earlier testified that he believed Aguirre's statement over those made by Patron-Montano, Sicairos, and Aguilar because Aguirre's statement was most consistent with the activity observed by the surveillance officers.

After listening to all the testimony including an audiotape of the interview Patron-Montano gave to investigators, the district court concluded that Patron-Montano lied when he claimed he had contacted Garbonio to supply the drugs. Based solely on Patron-Montano's lie about the source of the drugs, the district court overruled both of Patron-Montano's objections to the amended PSR and sentenced Patron-Montano to ninety-seven months' imprisonment and four years supervised release. Patron-Montano filed this appeal.

## II.    DISCUSSION

### A.    Standard of Review

In this appeal, Patron-Montano contends the district court erred when it concluded he lied about the source of the cocaine. Patron-Montano further

contends that because he truthfully provided investigators with all information he had concerning the offense of conviction, the district court erred when it denied him the two-level safety valve decrease. Patron-Montano also argues that the district court erroneously believed it was legally prohibited from granting him the three-level decrease for acceptance of responsibility because of the lie. This court reviews "the district court's legal interpretation of the [sentencing] guidelines de novo and review[s] its findings of fact for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Janusz*, 135 F.3d 1319, 1324 (10th Cir. 1998) (citation omitted). A district court's factual finding is clearly erroneous only "if it is without factual support in the record or if [this] court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (quotation omitted).

**B.     Safety Valve Provisions**

Patron-Montano was sentenced under the 1998 version of the sentencing guidelines. Patron-Montano argues that he is eligible for a two-level decrease in his base offense level under U.S.S.G. § 2D1.1(b)(6) because he meets the criteria found in the "safety valve" provisions of U.S.S.G. § 5C1.2. U.S.S.G. § 2D1.1(b)(6) states, "If the defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2 . . . decrease by 2 levels." The applicable criteria set forth in

8

U.S.S.G. § 5C1.2 are as follows:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2.

The government does not contest that Patron-Montano satisfied the first four criteria found in § 5C1.2 but argues only that Patron-Montano has failed to meet the fifth criterion because he lied about the source of the cocaine and, thus, necessarily lied about the involvement of a co-conspirator. *See United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995) (holding that a defendant is not entitled to a decrease under the safety valve provisions of § 5C1.2 if he fails "to disclose all that he knows concerning both his own involvement in the crime and that of any co-conspirators"). Patron-Montano maintains that he truthfully named

9

Garbonio as the source of the cocaine and, thus, met the fifth criterion.

A defendant has the burden of demonstrating, by a preponderance of the evidence, that he qualifies for relief from a minimum mandatory sentence under the safety valve provisions of § 5C1.2. *See United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996). Because § 5C1.2 and § 2D1.1(b)(6) are inexorably interwoven, we now hold that a defendant also has the burden of demonstrating that he qualifies for the § 2D1.1(b)(6) decrease. A defendant can satisfy his burden under § 2D1.1(b)(6) by demonstrating, by a preponderance of the evidence, that he meets the criteria set forth in § 5C1.2.

The sole factual issue presented to the district court at sentencing was whether Patron-Montano lied when he identified Garbonio as the source of the cocaine. By overruling Patron-Montano's objections to the PSR, the district court necessarily found that Patron-Montano had lied when he told investigators he had contacted Garbonio and arranged for Garbonio to supply the cocaine. A fair reading of Aguirre's testimony at the sentencing hearing supports the conclusion that it was Aguilar, not Patron-Montano, who contacted the supplier. *See United States v. Jackson*, Nos. 98-6487, 99-6090, 2000 WL 710492, at *9 (10th Cir. June 2, 2000) ("[T]he credibility of a witness at sentencing is for the district court to evaluate."). After conducting a comprehensive review of the record, therefore, this court is convinced the district court did not commit clear

10

error in finding that Patron-Montano lied when he identified Ernesto Garbonio as the source of the cocaine. The district court's factual finding fatally undermines Patron-Montano's contention that he truthfully provided investigators with all information he had concerning the offense of conviction. *See Acosta-Olivas*, 71 F.3d at 379. Thus, based on its finding that Patron-Montano lied about the source of the cocaine, the district court properly denied Patron-Montano the two-level decrease under U.S.S.G. § 2D1.1(b)(6).

### C.    Acceptance of Responsibility

A defendant bears the burden of demonstrating he is entitled to the decrease for acceptance of responsibility under § 3E1.1 of the sentencing guidelines. *See United States v. Nelson*, 54 F.3d 1540, 1544 (10th Cir. 1995). Patron-Montano argues that he should receive the acceptance of responsibility decrease because he "fully admitted criminal liability and . . . honestly and candidly provided all the information he had concerning any criminal activity about which he was asked." Although the government does not argue that Patron-Montano failed to truthfully admit his own criminal conduct,[3] a defendant

---

[3]The government does not argue that Patron-Montano was required to voluntarily provide information about his co-conspirators to qualify for the acceptance of responsibility decrease. That issue, therefore, is not before this court. The government, in fact, maintains that Patron-Montano could have remained silent with respect to his co-conspirators' participation in the charged offense without affecting his eligibility for the acceptance of responsibility

(continued...)

11

who truthfully admits his role in the charged offense is not automatically entitled to receive the § 3E1.1 decrease. *See* U.S.S.G. § 3E1.1, comment. (n.3) ("A defendant who enters a guilty plea is not entitled to an adjustment under [§ 3E1.1] as a matter of right."). Even when a defendant truthfully admits his role in the offense of conviction, a district court may properly deny the § 3E1.1 decrease if the court concludes the defendant engaged in conduct that is inconsistent with acceptance of responsibility. *See id*. (providing that evidence a defendant entered a guilty plea and truthfully admitted or did not falsely deny relevant conduct, can be weighed against "conduct of the defendant that is inconsistent with such acceptance of responsibility").

Patron-Montano argues that a lie about the actions of a co-conspirator can never be considered by the district court when determining a defendant's eligibility for the acceptance of responsibility decrease. Admittedly, a defendant's failure to admit relevant conduct *beyond the offense of conviction* does not render him ineligible to receive the acceptance of responsibility decrease. *See United States v. Contreras*, 59 F.3d 1038, 1040-41 (10th Cir. 1995). The district court, however, is allowed to consider whether the defendant truthfully admitted or did not falsely deny *relevant conduct* for which he is

[3](...continued)
decrease.

12

accountable under § 1B1.3 of the sentencing guidelines. *See* U.S.S.G. § 3E1.1, comment. (n.1(a)). [4] Relevant conduct includes the reasonably foreseeable acts committed by co-conspirators in furtherance of the conspiracy. *See id.* § 1B1.3(a)(1)(B) (defining relevant conduct to include "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). Thus, a defendant's truthful admission of relevant conduct can provide support for the § 3E1.1

_____

[4]Specifically, the application notes to the sentencing guidelines provide that a defendant can show his eligibility for the acceptance of responsibility decrease by,

> truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under [§ 3E1.1]. A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

U.S.S.G. § 3E1.1, comment. (n.1).

13

decrease. Similarly, when a defendant lies about relevant conduct, the lie can be the basis for denying the § 3E1.1 decrease.

Here, the lie told by Patron-Montano involved the identity of a participant in the conspiracy. Under the sentencing guidelines, Patron-Montano is accountable for any reasonably foreseeable acts committed by others "in furtherance of the jointly undertaken criminal activity." *Id*. When a defendant falsely identifies a participant in the criminal activity, investigators are hindered or precluded from determining all acts committed in furtherance of the jointly undertaken criminal activity. Common sense, therefore, dictates that Patron-Montano's false identification of the source of the cocaine necessarily constitutes a lie about relevant conduct. [5]

The district court made the following statement at the sentencing hearing when it denied the § 3E1.1 decrease:

> The Court finds that the points that are being claimed by the defendant; that is, the three points for acceptance of responsibility and the two points under 5C1.2 are based upon the same information, that they cannot be separated. That it would be inconsistent for this Court to say that this defendant did not accept

---

[5] At the sentencing hearing, the government contended Sicairos was the source of the cocaine. In reaching its conclusion that Patron-Montano lied when he claimed Ernesto Garbonio supplied the cocaine, the district court necessarily agreed with the government's position. Although nothing in the record indicates Patron-Montano denied that Sicairos was involved in the conspiracy, Patron-Montano's lie about the source of the cocaine, nonetheless, constitutes a lie about relevant conduct.

14

responsibility and then on the other hand to say that he should get the two-point reduction for the safety valve because of subsection 5 of 5C1.2.

It is unclear from this statement whether the district court believed it could not decrease Patron-Montano's base offense level for acceptance of responsibility in light of its finding that Patron-Montano failed to truthfully admit relevant conduct. The application notes to the sentencing guidelines provide, "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.3). Although it would be error for a district court to categorically deny the § 3E1.1 decrease simply because a defendant lied about relevant conduct, the court can properly consider a defendant's lie about relevant conduct in evaluating the defendant's eligibility for a § 3E1.1 decrease. When a sentencing court concludes that a defendant lied about relevant conduct, the court could, in an exceptional case, still give a reduction for acceptance of responsibility. *Cf. id*. § 3E1.1, comment. (n.4). Here, Patron-Montano has advanced no evidence clearly demonstrating an extraordinary case for acceptance of responsibility notwithstanding his falsehood regarding relevant conduct. Patron-Montano, therefore, failed to meet his burden of demonstrating that he is entitled to the acceptance of responsibility decrease and the district court properly denied the § 3E1.1 decrease. *See Nelson* , 54 F.3d

15

at 1544.

**III. CONCLUSION**

The district court's denial of the three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1, and the court's denial of the two-level decrease under the safety valve provisions of U.S.S.G. §§ 2D1.1(b)(6) and 5C1.2 are **affirmed** .