**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 23 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LOU JEAN WYCHE,

    Defendant - Appellant.

No. 02-7024

(E.D. Oklahoma)

(D.C. No. 00-CR-77-S)

**ORDER AND JUDGMENT** *

Before **O'BRIEN** , **McWILLIAMS** , and **ANDERSON** , Circuit Judges.

After a jury trial, Appellant Lou Jean Wyche was acquitted of conspiracy to posses with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, and interstate transportation in aid of racketeering in violation of 18 U.S.C. §§ 1952(a)(1) and (2), but was convicted of three counts of perjury in violation of 18 U.S.C. § 1623. The district court denied Wyche's subsequent motion for a

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

judgment of acquittal and, applying USSG § 2J1.3(c)(1), sentenced her to a total of 78 months' imprisonment.

Wyche appeals both her conviction and sentence, arguing: (1) there was insufficient evidence to support the jury's finding that she was under oath—an element of the crime of perjury—when she made the false declarations upon which the perjury charge was based; (2) the district court erred in applying USSG § 2J1.3(c)(1) and sentencing her as an accessory after the fact to possession of 192.4 grams of methamphetamine because there was no credible evidence linking her to the drug conspiracy; and (3) the district court erred when it did not admit the entirety of her testimony from her first trial. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## BACKGROUND

On October 3, 2000, officers from the Drug Enforcement Administration (D.E.A.) and local law enforcement officers from Muskogee County, Oklahoma, established a drug interdiction point off of I-40. In the course of the interdiction, the officers arrested Mack Flynn and Connie Ketcher for possession of three pounds of a substance containing methamphetamine. Flynn and Ketcher were driving from Morgan Hill, California, where they had obtained the

methamphetamine, to Sallisaw, Oklahoma, where, according to Ketcher, they were to deliver the drugs to a co-conspirator.

Subsequent to her arrest, Ketcher began cooperating with the government and named Lou Jean Wyche as a co-conspirator, alleging, among other things, that Wyche planned the trip to California. According to Ketcher, Wyche met them in California and procured, packaged and assisted in hiding the methamphetamine that she and Flynn were carrying when they were arrested.

Wyche was indicted on one count of conspiracy to possess with intent to distribute methamphetamine and one count of interstate transportation in aid of racketeering. At her first trial, in February of 2001, she testified that she traveled to California to visit with two friends, Melony Bryans and Fern Artz, and that she stayed at the Micro-Tel Motel during her entire trip, including the night of October 1, 2000. Although she admitted seeing Flynn and Ketcher in California, she testified that she had no knowledge of their plan to transport drugs back to Oklahoma. She also testified that she picked that weekend to visit California because her husband, Larry Wyche, was in Casper, Wyoming, for a rodeo. The jury in this first trial was unable to reach a unanimous verdict and a mistrial was declared.

A second trial was scheduled for March. However, shortly after the jury was impaneled, a local paper ran an article on the Wyche trial, which a number of

jurors, contrary to the court's instructions, read. Another mistrial was declared and a third trial was scheduled for April. At the close of the third trial the jury was again deadlocked, and the court declared a third mistrial.

After the third trial, the grand jury issued a superceding indictment charging Wyche with three counts of perjury in addition to the two original counts. The government alleged that Wyche committed perjury when she testified that: (1) the purpose of her trip to California was to see Bryans and Artz and that she did in fact see them; (2) she stayed at the Micro-Tel Motel on the night of October 1, 2000; and (3) her husband was in Casper, Wyoming, for a rodeo causing him to be away from home from September 26 to October 3, 2000. The district court scheduled a fourth trial to begin in June.

During the fourth trial the government introduced evidence that Wyche had neither visited, nor made plans to visit, Bryans and Artz while in California. Further, the government introduced evidence that Wyche did not stay at the Micro-Tel Motel on the night of October 1, 2000—she checked into the Executive Inn at the San Jose Airport that night. Finally, the prosecution introduced evidence that Larry Wyche did not travel to a rodeo in Casper because the rodeo had been cancelled.

Wyche did not testify in the fourth trial. The government, however, introduced excerpts of her testimony from the first trial. She objected to the

-4-

admission of the transcript of her testimony. When her objection was overruled, she insisted that the court admit the entire transcript rather than just the excerpts introduced by the government. The court informed Wyche that the rule of completeness allowed her to have the entire transcript of her testimony admitted if she offered it properly. There is no record of Wyche ever making such an offer.

At the close of the fourth trial, the jury found Wyche not guilty of the conspiracy and racketeering counts but guilty of all three counts of perjury. In response, Wyche filed a motion for a judgment of acquittal. She claimed that the government failed to introduce evidence of two of the essential elements of the crime of perjury—that she was under oath when she made the declarations and that the declarations were made in a court of the United States. The district court denied her motion because it found that there was sufficient evidence to support the jury's verdict.

Finally, Wyche objected to the presentence report. She argued that the government failed to provide credible evidence that she was involved in the drug conspiracy. Therefore, she argued that the court should apply USSG § 2J1.3(a) and sentence her under the guideline for perjury rather than applying USSG §§ 2J1.3(c)(1) and 2X3.1, sentencing her as an accessory after the fact to possession of methamphetamine, as the presentence report recommended. After considering Wyche's argument, the court found by the preponderance of the

evidence that, notwithstanding her acquittal on counts one and two, Wyche was involved in the drug conspiracy and that the underlying offense involved 194.2 grams of methamphetamine.  Therefore the court overruled Wyche's objection, applied USSG §§ 2J1.3(c)(1) and 2X3.1, and sentenced her to a total of 78 months' imprisonment.

## DISCUSSION

### I.    Sufficiency of the Evidence

The essential elements of the crime of perjury are:  "(1) the defendant made a declaration under oath before a federal court; (2) such declaration was false; (3) the defendant knew the declaration was false; and (4) the declaration was material."   United States v. Durham   , 139 F.3d 1325, 1331 (10th Cir. 1998) (citing 18 U.S.C. § 1623(a)).  Wyche argues that there was insufficient evidence to support the jury's conclusion as to the first element of perjury:  that she was under oath when she made the perjurious declarations.    [1]

---

[1]Although Wyche did not argue in her appellate briefs that there was insufficient evidence to support the conclusion that the statements were made in a court of the United States, she did raise the issue during oral argument.  However, failure to raise an issue in the opening appellate brief waives that issue.  See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).  Arguments raised for the first time at oral argument come "too late".  Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 n.5 (10th Cir. 1997); see also, United States v. Osterlund, 671 F.2d 1267, 1267 n.2 (10th Cir. 1982) ("Because this issue was

(continued...)

Sufficiency of the evidence is a legal issue that we review de novo. _United States v. McKissick_, 204 F.3d 1282, 1289 (10th Cir. 2000). Those challenging the sufficiency of the evidence are,

> faced with a high hurdle: in reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether, taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

_United States v. Voss_, 82 F.3d 1521, 1524-25 (10th Cir. 1996) (quotations omitted). "Rather than examining the evidence in bits and pieces, we evaluate the sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." _United State v. Wilson_, 107 F.3d 774, 778 (10th Cir. 1997) (quotations omitted). "We reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." _United States v. Wacker_, 72 F.3d 1453, 1462-63 (10th Cir. 1995).

Wyche's argument is in two parts. First, there was no direct evidence that she was under oath when she testified at the first trial. Second, she argues that the "under oath" element cannot be proved using circumstantial evidence.

---

[1](...continued)
raised for the first time during oral argument, we need not reach this issue on appeal.").

## A. Direct Evidence

Wyche's first argument, that " *no one* testified that Wyche's previous testimony was given under oath," and thus there was no direct evidence that she was under oath when she testified at her first trial, Appellant's Br. at 12, is not supported by the record. Special Agent Springer of the D.E.A. testified on cross examination by the defense as follows:

> Q:    How do you know who made the phone call?
> A:    Because my information is, from the previous trial, is that [Ms. Wyche] said that she and only she had access to her credit card, which made the phone call that was charged.
>    . . . .
> Q:    So my question is, while you think that it was [Ms. Wyche], you don't know who made the call or who received it?
> A:    And my answer, as before, is I could not tell you who received the phone call from in front of that store, but according to [Ms. Wyche's] testimony   under oath  was that she and only she had that card.

Tr. of Trial, June 5, 2001, Appellee's App. at 7-8 (emphasis added). Springer later identified the "previous trial" as Wyche's first trial, which was held in February of 2000. Id. at 14. It is evident from the record that the other references to testimony by Wyche, detailed below, were to that trial as well.

## B. Circumstantial Evidence

In addition to this direct evidence, there was circumstantial evidence that the statements in question were made under oath. Although Wyche contends,

-8-

without supporting authority, that the "under oath" requirement cannot be established by circumstantial evidence, we disagree.

First, as Wyche concedes, the other elements of the crime of perjury may be proved using circumstantial evidence. See Appellant's Br. at 14.

Second, as indicated by our standard of review, the elements of a crime ordinarily can be proved by direct or circumstantial evidence. See Voss, 82 F.3d at 1524-25. Case law on the issue establishes that "perjury cases, like all criminal cases, are susceptible to proof by circumstantial evidence." United States v. Chapin, 515 F.2d 1274, 1280 (D.C. Cir. 1975); see also United States v. Serafini, 233 F.3d 758, 770 (3d Cir. 2000) (holding that intent and knowledge can be proved by circumstantial evidence).

Third, the perjury statute itself supports that rule. See 18 U.S.C. § 1623(e). It specifically provides that there is no requirement that "proof be made by . . . documentary or other type of evidence." Id. Wyche's conclusory dismissal of the language of this section as a "red herring," Appellant's Br. at 15, does nothing to explain why the government's interpretation of it—that it explicitly authorizes proof of all elements of perjury by either direct or circumstantial evidence—is incorrect.

For these reasons, Wyche's other, and similar, arguments—that there is no case explicitly holding that the "under oath" requirement of perjury can be proved

using circumstantial evidence, that proof by direct evidence is better, and that there was no obstacle to proving that she was under oath with direct evidence— are equally unpersuasive.

The government contends that the following circumstantial evidence supports the jury's finding on the under oath requirement of the statute: Officer Kidwell testified he was present at the trial of Lou Jean Wyche and that he heard her "testimony," see Appellant's App. Vol. 2 at 361, 368; he read from a "transcript" of Wyche's testimony, see id. at 369; the jury saw 27 witnesses at trial, all of whom were sworn in prior to testifying, from which they could infer that a witness who gives testimony in court is under oath, see Appellee's Br. at 16; and, in the context of the trial, it was evident that the transcript and Wyche's testimony at issue were from Wyche's first trial in federal district court.

It is the government's position that use of the word "testimony" implies that the speaker was under oath. The government cites a number of cases in support of this position. See e.g. Edelstein v. United States, 149 F. 636, 640 (8th Cir. 1906) (finding that "[t]he word 'testimony' or to 'testify' implies the usual preliminary qualification of taking an oath to speak the truth"); see also United States v. Molinares, 700 F.2d 647, 651 n. 6 (11th Cir. 1983) (concluding that "[t]he fact that the proceedings take place before a court or a grand jury gives rise to an inference that the defendant was under oath while testifying").

Wyche counters that inferring she was under oath from the use of the word "testimony" would "eliminate the need for the 'under oath' element" since, according to the government, "if the person testified, they must have been under oath." Appellant's Reply Br. at 3. While Wyche's description of the logical extension of the government's position does not lack merit, her conclusion is flawed. It is not an element of perjury, as defined by §1623, that a person testify under oath. Rather the requirement is that the person make a declaration under oath. The government's position would eliminate the "under oath" requirement only if the word "testify" were first read into the statute. Because we decline to read the statute in this manner, we find Wyche's argument unpersuasive.

Wyche next argues that it is unreasonable to infer that she was under oath because witnesses are not always sworn before they testify. In support of her argument she cites numerous cases, mostly unpublished, in which witnesses gave "testimony" that was not under oath. All of the cases she cites are factually distinguishable from the present case.

However, even were Wyche able to point to cases in which a witness was not placed under oath, this would not undermine the government's position in the context of this case. The government's position is that it is reasonable to conclude that a person who gives "testimony" is under oath. An inference is "reasonable where there exists a probability that the conclusion flows from the

-11-

proven facts." United States v. Rahseparian, 231 F.3d 1257, 1262 (10th Cir. 2000) (quotation omitted). An inference is only unreasonable where the jury "engaged in a degree of speculation and conjecture that renders its findings a guess or mere possibility." Id. Merely pointing to rare cases in which witnesses were not sworn in will not convert a "probability" into a "guess or mere possibility." Id. In any event, as indicated above, the record in this case contains more than just the use of the word "testimony," and the references to testimony must be interpreted in context.

We conclude that the entirety of the evidence in the record, both direct and circumstantial, together with proper inferences drawn from it, when viewed in the light most favorable to the government, was sufficient for a reasonable jury to find beyond a reasonable doubt that Wyche was under oath when she made the false declarations at her first trial.

## II. Sentence

Section 2Jl.3 of the Sentencing Guidelines provides that if the defendant is convicted of perjury with respect to a criminal offense, the sentencing court should "apply §2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than [the base offense level for perjury: 12]." USSG § 2J1.3(c)(1). At sentencing, the district court found that a

preponderance of the evidence linked Wyche to the drug conspiracy. Therefore, the court found Wyche's perjury was related to a conspiracy to traffic drugs, and sentenced her as an accessory after the fact to that crime, resulting in an offense level of 26. Wyche's criminal history placed her in category I. Her offense level and criminal history resulted in a guideline imprisonment range of 63 to 78 months, and she was sentenced to 78 months' imprisonment.

Wyche objects to this application of the Sentencing Guidelines because, she argues, there was insufficient evidence to establish that she was involved in the drug conspiracy. The thrust of Wyche's argument is that Ketcher's testimony, which Wyche asserts is the only evidence linking her to the drug conspiracy, was not credible. Without Ketcher's testimony, Wyche argues, there was not enough evidence for the district court to find, by a preponderance of the evidence, that she had any knowledge of the drugs. Therefore, her offense did not involve perjury in respect to any other criminal offense and the district court should have applied USSG § 2J1.3(a), the basic perjury sentencing guideline, resulting in a much shorter sentence.

"We review the district court's application of the Sentencing Guidelines de novo and the district court's factual determinations for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Vallo, 238 F.3d 1242, 1250 (10th Cir.) (quotation omitted), cert denied,

-13-

532 U.S. 1057 (2001). "A district court's factual finding is clearly erroneous only if it is without factual support in the record or if this court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." United States v. Patron-Montano, 223 F.3d 1184, 1188 (10th Cir. 2000) (quotation omitted). "[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." United States v. Watts, 519 U.S. 148, 157 (1997).

Wyche directs our attention to the district court's statement that much of Ketcher's testimony was questionable. See Appellant's App. Vol. 2 at 455. She then relies on United States v. Renteria, 161 F. Supp. 2d 1294, 1300 (D. N.M. 2001), in which the district court also found that the witness whose testimony linked the defendant to a drug conspiracy lacked credibility. As a result of that finding, the court in Renteria applied the lesser offense level in USSG § 2J1.3(a). See id. at 1300-01. Wyche unsuccessfully argued in the district court, and reasserts here, that the facts in Renteria are sufficiently similar to the facts in this case to compel a similar disposition.

That argument, however, ignores the facts that corroborate Ketcher's testimony, facts that were not present in Renteria. While there were inconsistencies in Ketcher's testimony, see Appellant's Br. at 19-23, the record is

replete with evidence corroborating her assertion that Wyche was involved in the conspiracy to transport the methamphetamine: she flew to California on September 29 and returned on October 2, see Tr. of Trial, Appellee's App. at 25-27, 122-26; her credit card was used to reserve both rooms at the Micro-Tel Motel in Morgan Hill—the one she used and the one Flynn and Ketcher used, see id. at 31-35; her cell phone was found in the car Flynn and Ketcher were driving in when they were arrested, see id. at 2; the police found an atlas with her handwritten notes and directions to the Mirco-Tel Motel in Morgan Hill when they searched Flynn and Ketcher's home, see id. at 74-76; and, there were records of numerous phone calls suggesting that Flynn and Ketcher were in frequent contact with Wyche during the entire trip to and from California, see id. at 43-49.

Further complicating Wyche's argument, the district court, unlike the Renteria court, found that a preponderance of the evidence linked Wyche to the methamphetamine. See Tr. of Sentencing Proceedings, Appellant's App. Vol. 2 at 455-56. This conclusion had substantial "factual support in the record"; therefore we conclude that the district court's finding was not clearly erroneous. Patron-Montano, 223 F.3d at 1188.

**III.    Exclusion of the Transcript**

Finally, Wyche argues that the district court erred when it failed to admit the entire transcript of her testimony in the first trial.  The record does not support her argument.  The district court indicated that it would admit the entire transcript if it were offered by the defense.    See Appellant's App. Vol. 2 at 365-66.  Appellant did not point to any place in the record where the entire transcript was offered by defense but was not admitted by the court.  We found no evidence that the defense ever properly offered the entire transcript of Wyche's testimony.

"We review the district court's evidentiary rulings for abuse of discretion." United States v. Bautista   , 145 F.3d 1140, 1151 (10th Cir. 1998).  This was no abuse of discretion on the part of the court.

## CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge