**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LATRON NITCHELL JOLLY,

    Defendant - Appellant.

No. 04-7100
(E.D. Oklahoma)
(D.Ct. No. CR-03-107-P)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Latron Jolly pled guilty to possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). He was sentenced to the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

statutory minimum of 120 months imprisonment. Jolly appeals from his sentence, arguing the district court committed reversible error when it denied his motion for downward departure under the safety valve provision. *See* 18 U.S.C. § 3553(f), USSG §5C1.2.[1] Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

## I. Factual Background

Jolly was indicted on four counts of possession with intent to distribute a controlled substance (cocaine base) in violation of 21 U.S.C. § 841(a)(1). He pled guilty to Count One, possession of 23.4 grams of cocaine base with intent to distribute. Prior to sentencing, Jolly made a motion for downward departure under the safety valve provision of USSG §5C1.2, and for an additional two-level downward adjustment to his base offense level under USSG §2D1.1(b)(6).[2] The

---

[1]Because Jolly was sentenced pursuant to the 2003 edition of the United States Sentencing Guidelines Manual, all guideline citations refer to the 2003 edition, unless noted otherwise.

[2] USSG §2D1.1(b)(6) states, "[i]f the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels."

USSG §5C1.2(a) provides:

(a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:

government objected, asserting that Jolly failed to satisfy the fifth prong of USSG §5C1.2(a), requiring him to disclose truthful information relevant to his offense. The government wanted Jolly to identify his source, whom it believed to be the target of an ongoing drug investigation. Although the government offered Jolly time to comply with the provision, he insisted he could not provide any information that was not already known to the government.

Three weeks prior to sentencing, Jolly for the first time provided written

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

statement concerning his actions in which he identified a "John Smith" as his supplier. Two days later, Jolly amended his written statement to note John Smith had died the previous summer. During the original sentencing hearing on May 14, 2004, Jolly again asserted John Smith was his only supplier. He acknowledged being acquainted with the target of the government's investigation, but denied any knowledge of that individual's activities with respect to drug trafficking.

The government contested the veracity of Jolly's information. Therefore, during the May sentencing hearing, the government called Agent Curtis Collins with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to testify about the investigation. Agent Collins testified the ATF had targeted an individual believed to be a drug dealer in the area. Jolly was not part of the investigation until a confidential informant (CI) was unable to obtain narcotics from the target because the target suspected the CI was an informant. The CI named Jolly as a person who sold crack cocaine for the target. The ATF arranged for the CI to purchase drugs from Jolly. The ATF hoped to "get" the target by developing a case against Jolly.

Agent Collins also testified about records of telephone calls between Jolly's phone and the target's. He further stated that individuals other than the CI had confirmed that the target was Jolly's source. Finally, Agent Collins testified he

had never heard of John Smith, nor received any information about him from the law enforcement community.

The district court was skeptical of Jolly's testimony (and said so), but continued the hearing and directed the probation officer to conduct a further investigation. During the final sentencing hearing on September 10, 2004, the court heard testimony from the government's CI, who discussed his attempts to purchase narcotics from the target, the many times he had observed Jolly buying drugs from the target, and that the target was Jolly's only source. The CI further testified John Smith was a drug dealer who also obtained his drugs from the target.

Finding Jolly had not met his burden under the safety valve guideline, the district court denied his motion for downward departure. Immediately prior to imposing sentence, the district court gave Jolly one last opportunity to provide relevant information to the government which would entitle him to safety valve relief. When Jolly declined, the district court sentenced him to 120 months imprisonment, the statutory mandatory minimum.[3]

_____

[3] Jolly pled guilty to possession of 23.4 grams of cocaine base with intent to distribute, an amount less than the 50 grams required to trigger the 120 month mandatory minimum term set forth in 21 U.S.C. § 841(b)(1)(A)(iii). However, pursuant to USSG §1B1.3(a)(2), Jolly was held accountable for the total quantity of cocaine base (82 grams) he sold to the CI from June 2 through July 16, 2003.

## II. Standard of Review

We review a district court's interpretation of the sentencing guidelines de novo. *United States v. Patron-Montano*, 223 F.3d 1184, 1188 (10th Cir. 2000). We review its application of the Sentencing Guidelines' safety valve provisions for clear error. *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1129 (10th Cir. 2003) (citation omitted). "A district court's factual finding is clearly erroneous only if it is without factual support in the record or if [this] court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Patron-Montano*, 223 F.3d at 1188 (quotations omitted). "We are cognizant that the district court's application of the safety valve is fact specific and dependent on credibility determinations that cannot be replicated with the same accuracy on appeal." *Virgen-Chavarin*, 350 F.3d at 1129.

## III. Safety Valve Relief

It is undisputed that Jolly met the first four criteria of 18 U.S.C. § 3553(f) and USSG §5C1.2. The only issue is whether he also complied with the fifth criteria by "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5); USSG §5C1.2(a)(5).

We have consistently held that the defendant has the burden of proving, by

a preponderance of the evidence, the applicability of the safety valve provision. *Patron-Montano*, 223 F.3d at 1189; *United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996). This includes the obligation of being truthful, *United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995), and providing "all information and evidence . . . concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f)(5); USSG §5C1.2(a)(5). As we noted in *Acosta-Olivas*,

> The phrase "all information and evidence" is obviously broad. The Application Notes to § 5C1.2 define "offense or offenses that were part of the same course of conduct or of a common scheme or plan" to mean "the offense of conviction and all relevant conduct." USSG § 5C1.2, comment. (n. 3). "Relevant conduct" has in turn been defined to include "in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG §1B1.3(a)(1)(B).

71 F.3d at 378.

Jolly argues he met his burden simply by naming an individual, John Smith, as his supplier. He further argues that because the government could not disprove this information, the district court erred in refusing to apply the safety valve provision.

The district court was correct in interpreting the statute to require a "significant nexus between the defendant's conduct and those other offenses about which [he] is obliged to provide information . . . ." (R. Vol. V at 47.) The district court found Jolly was "required to provide truthful information relevant to

his own course of conduct and his immediate chain of distribution, that is to say from whom he bought and to whom he sold . . . ." (*Id.*) The district court further found Jolly had not met this obligation, a determination clearly supported by the record. Despite being given multiple opportunities to comply with the requirements of §5C1.2(a)(5),[4] Jolly persisted in naming a deceased individual as his supplier and providing minimal information about his own conduct.

The probation officer was able to corroborate much of Jolly's testimony about John Smith's existence, with whom and where he lived, and the fact of his death. The record is clear. Jolly knew Smith; they were friends. What is not clear, or even probable, from the record is Smith's role as Jolly's supplier. Although Smith's widow denied ever having observed him use or sell drugs, the CI testified Smith too purchased his drugs from the target. Significantly, the CI testified Jolly would not obtain drugs from anyone except the target.

The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze. *Virgen-Chavarin,* 350 F.3d at 1134 (citation omitted). The district court was entitled to "draw reasonable inferences from the

---

[4] The record reflects Jolly was approached once prior to indictment, at least once after indictment, and was asked to cooperate with the government. He was also given several opportunities during the two sentencing hearings to provide information; because of the length of the mandatory minimum sentence, the district court beseeched Jolly to provide "all of the information he had in regard to his source of these drugs." (R. Vol. II at 35.) That Jolly refused to take advantage of these opportunities to comply with the requirements of the statute and guideline is not now reason for reversal.

evidence." *United States v. Alvarado-Rivera*, 412 F.3d 942, 948 (8th Cir. 2005) (en banc). It could reasonably conclude Jolly was motivated not to incriminate the target and the deceased Smith was a safe and convenient foil.

We have noted, "[w]hen a defendant falsely identifies a participant in the criminal activity, investigators are hindered or precluded from determining all acts committed in furtherance of the jointly undertaken criminal activity. Common sense, therefore, dictates that [Jolly's] false identification of the source of the [cocaine base] necessarily constitutes a lie about relevant conduct." *Patron-Montano,* 223 F.3d at 1190 (discussing USSG §3E1.1).

The court's determination that Jolly had not provided truthful information, and thus did not meet one of the prerequisites for relief under the safety valve provision, is clearly justified. AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge