**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VICTORIANO ROMERO,

    Defendant-Appellant.

No. 07-7045
(D.Ct. No. CR-07-9-01-RAW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Victoriano Romero pled guilty to one count of conspiracy to

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and § 846.[1]  He now appeals his seventy-month sentence, arguing the district court erred in failing to apply a two-level "safety valve" reduction pursuant to 18 U.S.C. § 3553(f) and United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 5C1.2.  We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Romero's sentence.

I.  Factual and Procedural Background

On September 21, 2006, Mr. Romero was a passenger in a car stopped by an Oklahoma Highway Patrol trooper for speeding and crossing the shoulder line on an interstate in Oklahoma.  When questioned, Mr. Romero stated the vehicle belonged to him and produced insurance and registration verification.  He also explained the driver, who did not speak English, was his cousin and they were driving to Springdale, Arkansas, to visit Mr. Romero's brother.  During a status check on the vehicle, the El Paso Intelligence Center reported the vehicle entered California from Mexico four days earlier and crossed the Mexican border into Arizona several times within the prior three months.  Based on this information and other circumstances surrounding the stop, state troopers requested and

---

[1]  In pleading guilty, Mr. Romero agreed to waive all appellate rights except to challenge any upward departure from the United States Sentencing Guidelines.  However, in this case, the government informed Mr. Romero it would not seek enforcement of the waiver.

obtained Mr. Romero's consent to search the vehicle. In the rear interior of the vehicle they found a fire extinguisher with fresh tool marks around the handle. Inside, they found several latex wrapped bundles, which a field test indicated contained heroin. A subsequent laboratory analysis verified the extinguisher contained 924.99 grams of heroin. Inside the vehicle agents also found a handwritten note containing a map marking streets in Brooklyn, New York, and several phone numbers, including a 1-800 phone number later discovered to be referenced in multiple Drug Enforcement Agency (DEA) investigations.

During a plea hearing, the district court accepted Mr. Romero's guilty plea to the charge of possession of 100 grams or more of heroin with intent to distribute. Thereafter, DEA agents conducted a safety valve debriefing with Mr. Romero; during the interview Mr. Romero indicated he did not know he was transporting drugs but believed the fire extinguisher contained currency. More specifically, he claimed someone known only to him as "Junior," whom he met at a dance in California, asked him to deliver the fire extinguisher to Springdale, Arkansas, after he learned Mr. Romero planned to travel there to see his brother. According to Mr. Romero, Junior called him several times before the trip and agreed to pay him $1,000 for transporting the fire extinguisher to that location. However, when agents asked Mr. Romero to identify Junior's telephone number from Mr. Romero's phone toll information, he stated he could not because Junior

used a restricted number. Mr. Romero also stated that when he arrived in Springdale he was to deliver the fire extinguisher to an unidentified male but claimed he had no other information about the delivery because Junior was to provide further instructions by phone. When challenged about his assertion the delivery was for Springdale, Arkansas, instead of a larger city with a more established market for heroin, Mr. Romero insisted he was delivering the extinguisher to Springdale and further claimed he had never seen the handwritten note found in his vehicle with the map marking streets in Brooklyn, New York, and several phone numbers. When agents dialed the 1-800 phone number, they discovered a recorded message instructing the person calling to enter a PIN number. A further check of the phone number established it appeared in over twenty DEA investigations in the prior two to three years and that all calls were incoming and not outgoing from that number. The 1-800 phone number was believed to be an access number for a prepaid calling card.

Following the interview, DEA agent Darren Lane, through a DEA agent located in Fayetteville, Arkansas, contacted a sergeant with the northwest Arkansas drug task force, who advised that in the past four years, the jurisdiction which included Springdale had only occasionally received information regarding heroin sales, but that attempts to purchase heroin had either not materialized or the drug actually involved was not heroin. Because a kilogram is considered a

significant quantity of heroin exceeding typical street-level distribution amounts, Agent Lane concluded the Springdale, Arkansas market could not support the distribution and sale of such a large amount of heroin and that the likely destination was New York City, as supported by the handwritten note found in Mr. Romero's vehicle showing a map with Brooklyn streets and the 1-800 phone number associated with several prior drug investigations.

Shortly thereafter, the government proposed: 1) Mr. Romero withdraw his guilty plea to the possession of heroin charge; 2) the government move to dismiss the charge; and 3) Mr. Romero plead guilty to a new conspiracy charge. The government later explained it made this proposal based on Mr. Romero's claim he believed he was transporting money instead of heroin, which was inconsistent with his testimony at his plea hearing and caused the government concern he might later contest his guilty plea to possession of heroin. Mr. Romero subsequently agreed to withdraw his plea, which the district court approved. The government then charged Mr. Romero with one count of conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and § 846, to which he pled guilty.

Following Mr. Romero's guilty plea, a probation officer prepared a presentence report calculating the base offense level at 30, given the drug offense

involved at least 700 grams but less than one kilogram of heroin. The probation officer then recommended a two-level reduction under U.S.S.G. § 2D1.1(b)(9) (now § 2D1.1(b)(11)) "if" Mr. Romero met the safety valve criteria in § 5C1.2. She also recommended a three-level reduction for acceptance of responsibility under § 3E1.1(b), for a total offense level of 25. An offense level of 25, together with Mr. Romero's criminal history category of I, resulted in a Guidelines range of fifty-seven to seventy-one months imprisonment. Mr. Romero stated he had no objections to the presentence report; however, the government filed an objection, stating Mr. Romero did not qualify for a safety valve reduction of two levels because he failed to meet the criteria in U.S.S.G. § 5C1.2(a)(5) by failing to truthfully provide to the government all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. In support, the government submitted a copy of the DEA report of the interview with Mr. Romero and a letter from the agent conducting that interview. Mr. Romero responded to the objection, stating the government was incorrect in its assertion because when Mr. Romero met with DEA agents he told them everything he knew, and immediately thereafter the government allowed him to withdraw his initial plea and plead to a different charge, thereby signifying "at least some modicum of belief in his assertions."

At the sentencing hearing the government renewed its objection to a safety

valve reduction, while Mr. Romero, through counsel, argued that the probation officer's recommendation of such a reduction also indicated Mr. Romero "raised a modicum of believability." Mr. Romero's counsel also renewed Mr. Romero's argument about the truthfulness of his statements during his DEA interview, including the fact that he has family in Springdale, and then explained that drug organizations typically do not provide the courier with specific information. In addition, counsel relayed Mr. Romero talked to his sister and she believed the map was left in his vehicle by one of her friends; counsel also pointed out the suspect phone number was merely an access number to a prepaid calling card which, for unknown reasons, a lot of people in the drug trade called.

In making its determination on the safety valve issue, the district court stated it had considered the DEA report and Agent Lane's letter regarding the interview with Mr. Romero, determined the government had made a reasonable inference from the available evidence that Mr. Romero had not been truthful, and found "the most telling evidence" included the Brooklyn map and phone numbers in Mr. Romero's vehicle for which he provided no plausible explanation. The district court then found Mr. Romero did not meet the criteria for a two-level safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. As a result, it calculated the total offense level at 27, resulting in an advisory sentencing range of seventy to eighty-seven months imprisonment, and sentenced

Mr. Romero to seventy months imprisonment. The district court further recounted each of the sentencing factors in 18 U.S.C. § 3553(a), which it stated it had considered in formulating Mr. Romero's sentence.

## II. Discussion

Mr. Romero now appeals his sentence, contending the district court erred in failing to apply the safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 based on its erroneous determination he failed to truthfully disclose all pertinent information. In support of his contentions, Mr. Romero claims the district court's conclusion he did not fully disclose all known information was not supported by the record and, in support, renews the same arguments raised before the district court. In sum, Mr. Romero claims none of the evidence provided by the government proves he knew more information than was offered at his DEA interview.

When reviewing a district court's application of the Guidelines in calculating a sentence, including the application of § 5C1.2, we review legal questions de novo and any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *See United States v. Patron-Montano*, 223 F.3d 1184, 1188 (10th Cir. 2000). "A district court's factual finding is clearly erroneous only if it is without factual support in the

record or if this court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks, citation, and alterations omitted). Since *United States v. Booker,* 543 U.S. 220 (2005), we have clarified that we review a district court's sentence for abuse of discretion, asking whether it is reasonable under the 18 U.S.C. § 3553(a) sentencing factors. *See United States v. Garcia-Lara*, 499 F.3d 1133, 1135 (10th Cir. 2007), *petition for cert. filed* (U.S. Mar. 7, 2008) (No. 07-9799). We employ the abuse of discretion standard by reviewing a district court's factual findings for clear error and deferring to the district court's "exercise of discretion within the bounds of reasonableness." *Id.* at 1136. We require reasonableness in two respects – "the length of the sentence, as well as the method by which the sentence was calculated." *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006) (per curiam).

Applying this standard of review, we turn directly to the legal principles applicable to Mr. Romero's safety valve claim. By statute, pursuant to 18 U.S.C. § 3553(f), the district court must "impose a sentence pursuant to guidelines ... without regard to any statutory minimum sentence," if it finds at sentencing the defendant meets certain safety valve criteria. 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2 (relying on the same criteria for the purpose of granting a below-mandatory minimum sentence). In this case, the only contested criterion is

whether Mr. Romero truthfully provided to the government all information and evidence he possessed concerning the conspiracy offense.[2] *See* 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2(a)(5). This criterion requires truthful disclosure, regardless of whether the information is deemed relevant or useful to the government's investigation. *United States v. Acosta-Olivas*, 71 F.3d 375, 377, 379 (10th Cir. 1995). A district court's determination on whether to apply a safety valve reduction "is fact specific and dependent on credibility determinations that cannot be replicated with the same accuracy on appeal." *United States v. Stephenson,* 452 F.3d 1173, 1180 (10th Cir. 2006). The burden is on Mr. Romero to show by a preponderance of the evidence he met this criterion. *See id.* at 1179.

In this case, in support of its opposition to a safety valve reduction, the government submitted the DEA report concerning Mr. Romero's interview, as well as a DEA agent's letter regarding that interview and his follow-up inquiries and conclusions regarding the likelihood the intended delivery was for the New York City area. In turn, at no time did Mr. Romero meet his burden of proof by providing any exculpatory evidence other than his own self-serving denials at his interview about possessing additional information and his counsel's assertions

---

[2] Because neither party contests or raises as an issue the other § 3553(f) criteria, we will not address them on appeal.

made on his behalf at the sentencing hearing, which included the assertion Mr. Romero talked to his sister, who told him the incriminating handwritten note and Brooklyn map belonged to her friend. Clearly, such an assertion by counsel is not considered evidence or otherwise sufficient to rebut the evidence in the record. Moreover, the fact the 1-800 phone number was associated with a calling card does not sufficiently counter the fact it was associated with multiple DEA investigations and found in Mr. Romero's car, which also contained a substantial amount of heroin and was identified as having entered California from Mexico four days earlier and crossed the Mexican border into Arizona several times within the prior three months. Thus, regardless of whether Mr. Romero has family in Springdale, Arkansas, or he knew whether the fire extinguisher contained currency or drugs, incriminating evidence in the record supports the district court's conclusion Mr. Romero was not forthcoming about all the information he possessed concerning his offense, including his possession and knowledge about the map found in his vehicle.

We also find unconvincing Mr. Romero's argument the government and probation officer initially believed the truthfulness of his assertions, as evidenced by the government's suggestion Mr. Romero withdraw his initial plea due to his conflicting interview statements and the probation officer's recommendation he receive a safety valve reduction if he provided truthful information. Again,

neither is sufficient evidence or information to rebut the evidence in the record supporting the district court's determination. We therefore reject Mr. Romero's claim the record did not support the district court's determination he was ineligible for a safety valve reduction and further conclude the district court's failure to apply such a reduction was not an abuse of discretion, noting we are not left with a definite and firm conviction that a mistake has been made.

Turning to the general issue of the reasonableness of Mr. Romero's sentence in conjunction with the § 3553(a) factors, we note the district court considered those factors in formulating Mr. Romero's sentence and imposed a sentence within the advisory Guidelines range. We have determined a presumption of reasonableness attaches to a sentence, like here, which is within the correctly-calculated Guidelines range. *See Kristl*, 437 F.3d at 1053-55. "This is a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Id.* at 1054. In this case, Mr. Romero has not met such a burden or otherwise demonstrated his sentence is unreasonable in conjunction with the 18 U.S.C. § 3553(a) sentencing factors.

III.  Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Romero's sentence.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge