In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3163

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TOMMIE DORSEY,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 CR 285--George M. Marovich, Judge.


Argued February 7, 2000--Decided April 12, 2000


  Before KANNE, ROVNER, and EVANS, Circuit Judges.

  ROVNER, Circuit Judge.  In 1994, Tommie Dorsey
was a 44-year-old married man with children, who
had managed an auto repair shop for the last
seven years, owned a split-level house in a
middle class neighborhood, and had no history of
crime. For some reason, at that point in his life
he decided to participate in a criminal endeavor
that ultimately resulted in his guilty plea on
four counts involving robbery and attempted
burglary. His participation began when he had the
misfortune to answer the phone one day at
Precision Tune, the auto repair shop that he
managed. The caller was Lisa Calloway Tate, and
she was calling to speak with another person at
the store. The record does not indicate whether
that other person was unavailable at the time,
but for some reason his phone conversation with
Tate lasted longer than one would expect under
the circumstances, because his contact with her
did not end there. He apparently spoke with her
a number of times after that, and she eventually
revealed to him that she was seeking to obtain
stolen computers from Chicago to sell in her
unlawful computer equipment distribution
operation in California. As strange as it seems
that she would reveal that to a person whom she
had met only fortuitously by phone, it is perhaps
even more unbelievable that Dorsey then agreed to
help her obtain stolen computers.

According to his plea agreement, Dorsey recruited others to help accomplish that goal, and they discussed robbing warehouses where computers were stored. Dorsey agreed to contribute money towards the first robbery, and supplied his accomplices with $2500. He knew that the money would be used to buy guns and equipment for the robbery, but did not know any other details of the robbery. His accomplices planned the first robbery, and decided to rob a UPS truck. They hijacked a UPS truck, bound the driver with duct tape and put him in the trailer, and drove the truck to the far south side of Chicago. There, they disengaged the trailer, moved the driver to the passenger side of the tractor, and drove to Summit, Illinois, where they released him. He was able to escape his bindings and contact the police. The police then staked out the trailer, and arrested one of the offenders, Edwin Evans, when he came back to unload the computers from it. With information obtained from Evans, they arrested two other people, Wardella Reese and Tony Scott, for the incident.

Scott decided to cooperate with the FBI, and through that contact the agents became aware of a second robbery that Tate was planning with Dorsey, involving a warehouse in which millions of dollars worth of computers were stored. Dorsey had recruited a number of people to carry out the plan, including an employee of the company operating the warehouse. According to the plan, the participants would enter the warehouse, "take out" the guard, and then use a forklift to load a tractor-trailer with a number of skids of laptop computers. They were equipped with ski masks and with two black-jacks and duct tape for subduing the guard. On the evening of May 3, 1995, the would-be robbers set out to accomplish the robbery, but returned without success because they were unable to find the warehouse. Undaunted, they returned the next evening, but were foiled by a locked door. They then drove around for a while, and returned for another attempt. At that point, the FBI, which was aware of the scheme and was waiting for them, approached the van to arrest them. All of the participants attempted to flee, but all except Harry Banks were apprehended and arrested immediately. Banks was subsequently arrested, as was Dorsey.

Dorsey expressed contrition and acceptance of responsibility almost immediately, and assisted law enforcement in the investigation and apprehension of the participants in the scheme. He was charged with four counts arising from the two robberies. At sentencing, the court applied the guideline based upon the most serious count,

which involved the UPS truck hijacking and robbery. His sentence was cut in half as a result of his cooperation with law enforcement, and ultimately he was sentenced to 43 months imprisonment and two years supervised release for his part in the offenses. On appeal, he challenges two sentence enhancements that were applied to him under the guidelines, and argues that his attorney was ineffective for failing to properly challenge those enhancements at sentencing.

Dorsey argues that the court erred in applying a five-point increase in the offense level under sec. 2B3.1(b)(2)(C) because a firearm was brandished, displayed or possessed in the UPS robbery, and in imposing a two-point increase under sec. 2B3.1(b)(4)(B) because a person was physically restrained to facilitate commission of the UPS robbery. See 1994 Guidelines sec. 2B3.1(b)(2)(C) & (4)(B). The gist of his argument appears to be that he was not involved in the UPS robbery, and was purposefully kept ignorant of it by the other offenders. Therefore, he contends that he should not be held accountable for the behavior of participants in that robbery.

Section 1B1.3(a) of the 1994 Guidelines clarifies the type of conduct that is relevant to determine Dorsey's offense level under Chapter Two. That section provides that a court may consider

(1)(A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)  in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

Dorsey was convicted of aiding and abetting the UPS robbery. That alone, however, is not dispositive of whether the increases for firearm possession and physical restraint of a person are appropriate. As Application Note 1 makes clear, "the principles and limits of sentencing accountability are not the same as the principles and limits of criminal accountability." The focus under sec. 1B1.3(a)(1) is on the specific acts or omissions that affect the guideline range, not on whether the defendant is criminally liable for

the offense as a whole. See sec. 1B1.3 Application Note 1. Therefore, the proper focus is not whether Dorsey aided and abetted in the UPS robbery as a whole, but whether the firearm possession and physical restraint were within the scope of the criminal activity that he jointly undertook, see United States v. Swiney, 2000 WL 149457 *4 (6th Cir. Feb. 14, 2000) (proper focus is on the scope of the specific conduct and objectives embraced by the defendant's agreement, not the scope of the offense as a whole), or whether those acts were a reasonably foreseeable part of a joint criminal endeavor.

Dorsey argues that he cannot be held responsible for those acts, because he was unaware of the plans to rob the UPS truck before it happened, and his accomplices purposefully kept him in the dark about it. At times, Dorsey appears to deny any responsibility whatsoever for the UPS robbery. The obvious problem with that argument is that he pled guilty to aiding and abetting the UPS robbery. At the plea hearing, the government recited the factual basis for the plea, including that "Mr. Dorsey has acknowledged that he supplied $2500 to the woman here in Chicago and that he knew the money was going to be used for the purchase of guns and other equipment to be used in the first robbery." The government's further statements at the plea hearing made clear that the "first robbery" was the robbery of the UPS truck. Dorsey now denies any such knowledge, but he was asked by the court whether he had any objections to the government's characterization of the facts. In response, Dorsey raised a question about whether a gathering with his accomplices should have been called a "meeting," as the government had done, when it was not really planned. If Dorsey would raise the rather insignificant question of whether "meeting" is the correct word to use, it is inconceivable that he would not mention the much more serious concern of whether he knew he was supplying money to purchase guns and other equipment for the UPS robbery. Moreover, those same allegations were set forth in the plea agreement, which Dorsey helped prepare. At best, the evidence indicates that Dorsey did not know details of the first robbery. He is responsible for the firearm possession and the physical restraint as long as they were reasonably foreseeable acts by his joint participants in the robbery scheme. The record amply supports the district court's determination that both acts were reasonably foreseeable. Dorsey supplied money that was to be used, in part, for obtaining a gun, and thus the firearm possession was certainly foreseeable. In fact, Dorsey's act of supplying the money for the firearm falls within sec. 1B1.3(a)(1)(A) as aiding in the possession

of the firearm, and does not require resort to the reasonable foreseeability element of sec. 1B1.3(a)(1)(B). Moreover, Dorsey admittedly aided in the robbery to obtain computer equipment in which a firearm was involved. It is reasonably foreseeable that to accomplish that robbery objective, a person might have to be physically restrained. In fact, Dorsey planned for that contingency in designing the second robbery. Thus, the district court's findings that the firearm possession and the physical restraint were foreseeable is not erroneous. See e.g. United States v. Corral-Ibarra, 25 F.3d 430, 438 (7th Cir. 1994) (reasonable foreseeability includes illegal activities in which defendant has a remote involvement).

Finally, Dorsey argues that his counsel at sentencing was ineffective for not challenging the increase for firearm possession, and for not orally arguing against the increase for physical restraint. We note that counsel did submit written objections to the court concerning a number of proposed increases under the Guidelines, and in fact was successful in some of those objections. In general, it is not ineffective assistance for an attorney to raise written objections and, when a court has indicated its familiarity with those objections, to refrain from repeating them orally in court. Most district court judges would have little tolerance for such repetition. In any case, we need not reach Dorsey's ineffectiveness claim. As we have already noted, the sentencing court committed no error in finding Dorsey responsible for the firearm possession and the physical restraint of the driver. Accordingly, he could not show that counsel's performance prejudiced him at sentencing. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); United States v. Godwin, 202 F.3d 969, 973-74 (7th Cir. 2000).

For the above reasons, the decision of the district court is affirmed.