In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1353

United States of America,

Plaintiff-Appellee,

v.

Nekis Atwater,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 CR 107--S. Hugh Dillin, Judge.

Argued October 29, 2001--Decided November 29, 2001

   Before Flaum, Chief Judge, and Posner and
Diane P. Wood, Circuit Judges.

   Posner, Circuit Judge.  At sentencing
after his plea of guilty to bank robbery,
the defendant, Atwater, was given a five-
level boost in his sentence on the ground
that he knew or should have known that a
firearm would be used in the robbery.
Atwater's codefendant, Cagle, was the one
who had actually entered the bank and
brandished a gun, but he claimed that he
and Atwater had planned the robbery
together and indeed that Atwater had
supplied the gun. Atwater admitted that
he had driven Cagle to and from the bank
but denied that he had supplied the gun
or knew that Cagle had one and planned to
use it in the robbery. U.S.S.G. sec.
2B3.1(b)(2)(C) imposes a five-level
enhancement for use of a gun during a
bank robbery and U.S.S.G. sec.
1B1.3(a)(1)(B) makes a defendant
accountable for all "reasonably
foreseeable" acts and omissions of others
in furtherance of a jointly undertaken
criminal activity. If Atwater knew that
Cagle planned to use a gun in the
robbery, then obviously that use was
"reasonably foreseeable" by him, was in
fact actually foreseen. And even if he
didn't know, it might still have been
reasonably foreseeable by him.

   On these vital questions (what he knew

and what he should have known), all the sentencing judge said was that Atwater "either knew or should have known that a firearm would be involved in this case. I have never heard of a bank robbery without a firearm. That is sort of a given. And there is testimony from more than one person that a firearm was involved here." We have italicized the key sentence in the judge's statement-- the only reason he gave for thinking that Atwater either knew or should have known that Cagle had a gun: namely that all bank robberies are committed with a gun. But that is false. Although the government's lawyer could not furnish us with any statistics, a call to his employer, the Department of Justice, produced the following FBI statistics for 1999: of the 6,599 robberies that year of banks and related financial institutions, firearms were used in only 1,988, which is 30 percent; and--confirming our own impression that many bank robberies are committed by unarmed persons who hand threatening notes to tellers--3,590 of the robberies were indeed committed by note. Federal Bureau of Investigation, Bank Crime Statistics Jan. 1-Dec. 31, 1999, 1, 4 (2000).

If all bank robberies were committed with the aid of a gun, then Atwater should have foreseen that Cagle would use one. But since fewer than a third are, a more discriminating analysis was called for, the sort of thing we find in United States v. Dixon, 982 F.2d 116, 120 (3d Cir. 1992), where the court found that "Stephanie Fletcher's conduct in pretending to brandish a gun was both in furtherance of the robbery and reasonably foreseeable by Dixon [the defendant]. Her act of pretending to have a gun facilitated commission of the bank robbery, and Dixon planned and masterminded that robbery. He gave explicit and detailed instructions to Stephanie and John Fletcher concerning its commission, he waited in the get-away car he had provided and he also provided all of the clothes and paraphernalia Stephanie and John used during the robbery. Considering Dixon's experience with offenses of this nature, as shown by his criminal history enhancement, and the characteristics of a robbery by force, in the old style, vi et armis, lead us to the conclusion that Fletcher's act was attributable to Dixon as a matter of

law." Cf. United States v. Williams, 176 F.3d 301, 307 (6th Cir. 1999); United States v. Soto, 959 F.2d 1181, 1187 (2d Cir. 1992). Even in United States v. Burton, 126 F.3d 666, 679 (5th Cir. 1997), where the analysis is perfunctory, the court was satisfied that the district judge had not committed a clear error in inferring foreseeability from the general character of bank robbery.

The judge's reasoning process in the present case is unclear. Cagle had said that Atwater had supplied the gun, and the judge could have chosen to believe him rather than Atwater. But we cannot tell whether he did believe Cagle. He gave Atwater a sentencing discount for acceptance of responsibility, which he would not, or at least should not, have done if he thought Atwater was lying in denying that he had furnished Cagle with the gun or even knew Cagle was planning to use a gun in the robbery. U.S.S.G. sec. 3E1.1, Application Note 1(a); United States v. Brack, 188 F.3d 748, 767 (7th Cir. 1999). Although some cases say, rather in the teeth of the wording of the application note, that a lie about relevant conduct is not an absolute bar to an acceptance of responsibility discount, United States v. Forte, 81 F.3d 215, 218 (D.C. Cir. 1996); United States v. Patron-Montano, 223 F.3d 1184, 1190-91 (10th Cir. 2000), the presumption that it is a bar is strong and the circumstances would have to be extraordinary to rebut it, as the court in Patron-Montano acknowledged. Id.; see also United States v. Sayetsitty, 107 F.3d 1405, 1410 (9th Cir. 1997). There was no rebuttal here. Atwater's lie, if it was a lie, went to the heart of his criminal conduct.

The line between what is actually foreseen and what is reasonably foreseeable is the line between what the defendant knew and what he should have known. United States v. LaCroix, 28 F.3d 223, 229 (1st Cir. 1994). And what he should have known was anything that was probable, because probability is the operational meaning of foreseeability. Id. at 229; Beul v. ASSE International, Inc., 233 F.3d 441, 447 (7th Cir. 2000); S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District, 50 F.3d 476, 480-81 (7th Cir. 1995); Reardon v. Peoria & Pekin Union Ry., 26 F.3d 52, 53 (7th Cir. 1994) ("to say that an injury is not

'foreseeable' is simply to say that the probability of loss is low"); Richard A. Epstein, Torts 269 (1999). The government's lawyer even conceded at argument that the practical meaning of foreseeable is probable. But how probable? In ordinary language, only low-probability events are described as unforeseeable. Supposing you closed your eyes before crossing a busy street, the chance of your being hit if you crossed it just once in this way might well not exceed 30 percent, because cars would swerve to avoid hitting you; if you were hit, however, anyone would say that it was a foreseeable consequence of your having closed your eyes. A substantial fraction of bank robberies do involve the use of a gun, so unless Atwater had some special reason to think Cagle wasn't going to use a gun, that use may well have been reasonably foreseeable to Atwater. But that was a judgment to be made by the sentencing judge in the first instance, on the basis of a correct understanding of all the pertinent facts. The 30 percent figure that we derive from FBI statistics abstracts from all the particulars of the individual case. Those particulars might make the probability of the accomplice's using a gun much higher or much lower. As no evidence was put before the sentencing judge in this case of how frequently guns are used in bank robberies and he greatly exaggerated that frequency and having done so neglected the particulars of the case, his judgment cannot be upheld. Atwater's sentence is vacated and the case is remanded for resentencing by a different judge.