**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael SLAUGHTER, Defendant–**
**Appellant.**

**No. 03–1681.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 2003.

Decided Dec. 2, 2003.

---

Daniel E. May, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Steven R. Hunter, Chicago, IL, for Defendant–Appellant.

Before KANNE, ROVNER, and EVANS, Circuit Judges.

## ORDER

Michael Slaughter drove the getaway car in the robberies of a bakery and a bank, and pleaded guilty to robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and bank robbery in violation of 18 U.S.C. § 2113. He was sentenced to concurrent terms of eighty-four months in prison. Slaughter appeals his sentence, arguing that the district court improperly concluded that a death threat made by his co-defendant during the bank robbery was reasonably foreseeable to him under U.S.S.G. § 1B1.3(a)(1)(B). That conclusion led to a two-level upward adjustment for a threat of death under U.S.S.G. § 2B3.1(b)(2)(F).

In June 2002 Slaughter agreed to drive George Galanos to a bakery in exchange for money. This was not the first time Slaughter had driven Galanos somewhere in exchange for money; he had driven him to a bank the day before, and he later learned that while he waited outside in the car, Galanos robbed the bank. At the bakery Slaughter again waited in the vehicle while Galanos went inside. There Galanos asked to see a bakery item but then threatened to shoot the salesperson if she did not open the cash register. Galanos was not carrying a weapon, but he lifted his shirt to imply that he was. When the salesperson said that she did not have a key to open the cash register, Galanos picked it up and ran out of the door. Slaughter then drove to an alley, where he and Galanos removed approximately $150 from the cash register. Galanos paid Slaughter $65 for his part in the deal.

The day after the bakery robbery Slaughter agreed to drive Galanos to a grocery store that had a bank inside. Slaughter was a willing participant in the robbery that occurred there. At the store, Slaughter waited for Galanos in the parking lot and followed his instructions to keep the front of the vehicle pointed toward the parking lot's exit. Galanos entered the bank, approached a teller, and said: "Open the register or I'll shoot." The teller gave Galanos five $100 bills bundled to conceal a dye pack. Galanos took the money, ran out of the store, and got in Slaughter's car saying "get the hell out." The dye pack exploded while they were exiting the parking lot and Galanos threw the stained bills out the window; but he still paid Slaughter $50 for driving him to the bank!

Slaughter pleaded guilty to both counts for which he was indicted. With regard to each robbery the parties agreed that Slaughter's base offense level was 20; the parties also agreed that the offense level for the bank robbery should be increased by two under § 2B3.1(b)(1) because the

crime involved a financial institution. The plea agreement also acknowledged that the government would recommend a two-level increase under § 2B3.1(b)(2)(F) because Galanos's death threats were reasonably foreseeable to Slaughter, but that Slaughter would oppose the recommendation.

In the presentence report the probation officer tracked most but not all of the recommendations the government made in the plea agreement, concluding that the threat Galanos made at the bakery was not reasonably foreseeable to Slaughter but that the threat made at the bank was foreseeable. The probation officer recommended an offense level of 22 for the bakery robbery and 24 for the bank robbery. Taking the greatest adjusted offense level–here 24–the probation officer then recommended a two-level increase under U.S.S.G. § 3D1.2 because there were two units of conviction, as well as a three-level decrease for acceptance of responsibility under § 3E1.1. With a resulting total offense level of 23 and a criminal history category of V, the probation officer's recommended guideline range was 84 to 105 months.

For purposes of this appeal, the key guideline determination occurred when the court accepted the probation officer's recommendation and applied the two-level upward adjustment under § 2B3.1(b)(1). The parties do not dispute that Galanos made a death threat to the bank teller. But it could be used as relevant conduct as to Slaughter under § 1B1.3(a)(1)(B) only if it was a "reasonably foreseeable" act committed "in furtherance of the jointly undertaken criminal activity." At sentencing the court noted that a bank robbery not involving a threat of death "may not be utterly impossible" but concluded nevertheless that it was reasonably foreseeable that a death threat would be made during a bank robbery:

But the one thing that I think is reasonably foreseeable is that [bank robbers] have to hand a note to the teller, or they have to say something to the teller. The thing that they are going to say to the teller is going to be implicitly a threat of death. All of that I think is what is reasonably foreseeable in this case.

On appeal Slaughter argues that the district court failed to identify specific facts to support its conclusion that Galanos's death threat was reasonably foreseeable. The government agrees that the district court did not examine the facts of the case but instead applied the adjustment based on the court's belief that "implied threats of death ... are likely, if not necessary, elements of any bank robbery, and are therefore inherently foreseeable." The determination of reasonable foreseeability is a question of fact reviewed for clear error. *See United States v. Mansoori*, 304 F.3d 635, 670 (7th Cir.2002). As such, we will reverse only if our review of the entire evidence leaves us "with the definite and firm conviction that a mistake has been committed." *United States v. Charles*, 238 F.3d 916, 918 (7th Cir.2001).

We cannot review a district court's decision, however, without understanding what facts the district court actually found, and on what basis it made those findings. *See United States v. Schaefer*, 291 F.3d 932, 938–39 (7th Cir.2002). Here, it is surely possible that the death threat was reasonably foreseeable to Slaughter, but the district court did not make any factual determinations supporting that conclusion.

In support of his argument, Slaughter cites a closely analogous case, *United States v. Atwater*, 272 F.3d 511 (7th Cir. 2001). In *Atwater*, we reversed a sentencing court's upward adjustment because the court failed to identify facts from the particular case to support its decision that a co-defendant's use of a gun during the

robbery was reasonably foreseeable to the getaway car driver. *Id.* at 512. The sentencing judge in *Atwater* based his decision not on the evidence in the case but on the fact that he had "never heard of a bank robbery without a firearm" and on his belief that it was "sort of a given" that a gun would be used during a bank robbery. *Id.* We noted that the judge's decision would have been correct "[i]f *all* bank robberies were committed with the aid of a gun," but we added that "since fewer than a third are, a more discriminating analysis was called for." *Id.* (emphasis in original). The *Atwater* court conceded that a "substantial fraction of bank robberies do involve the use of a gun, so unless Atwater had some special reason to think [his co-defendant] wasn't going to use a gun, that use may well have been reasonably foreseeable to Atwater." *Id.* at 513. The court concluded, however, that it was for the sentencing judge to evaluate this question "in the first instance, on the basis of a correct understanding of the pertinent facts." *Id.*

Slaughter argues that the district court considered only the nature of the offense and not the facts of his particular case. He contends that, as in *Atwater,* the nature of the offense was an insufficient basis from which to conclude that Galanos's death threat was reasonably foreseeable to him. We agree. First, Slaughter points out that the existence of a separate sentencing adjustment for use of a death threat during a bank robbery itself implies that a death threat is not inherent in the nature of the offense. Second, Slaughter notes that the district court supported its decision only with assumptions about the nature of the offense: (1) that all bank robberies involve death threats, and (2) that the "structure" of banks makes a death threat during a bank robbery reasonably foreseeable. Though we might also assume that bank robberies generally

involve threats of death to induce the teller to pass money to the robber, we cautioned in *Atwater* that statistics do not always confirm our common-sense assumptions. *See id.* And the district court here even articulated a scenario in which a bank could be robbed without a death threat: "Somebody could go into a bank, look around the teller's window, and as the teller is handing somebody some money that they are withdrawing, snatch that money, take it away, and there is no threat of death."

It was not enough, then, for the district court to apply the adjustment based only on its own belief that a threat of death is inherent in every bank robbery. We are not suggesting that the district court may not consider the nature of the offense as a factor in determining whether to apply the adjustment. Here, for example, the government–having had the benefit of *Atwater*–might conceivably have shown that it was probable that Galanos would make a death threat by producing evidence that a substantial portion of bank robberies involve a death threat. Better yet, the government might have evidence suggesting that Galanos told Slaughter precisely what he was going to do when he went into the bank. We explained in *Atwater* that "probability is the operational meaning of foreseeability," 272 F.3d at 513, and so satisfactory evidence of this nature would have warranted the adjustment unless Slaughter countered by proving that he did *not* have reason to know that Galanos would make a death threat. The government, though, offered no evidence about bank robberies in general–despite shouldering the burden of proof for upward adjustments, *United States v. Fudge,* 325 F.3d 910, 922 (7th Cir.2003)–and we could find none. It also offered no evidence about what Slaughter actually knew was going to occur.

Accordingly, the government is left here with trying to identify facts in *this* case to support its argument that Galanos's death threat was reasonably foreseeable to Slaughter. The government appears to admit that some factual support was necessary. For example, it argues that the *"Atwater* Court precluded only total reliance upon unsupported and erroneous generalizations of fact such as that all bank robberies involve firearms," even though that is exactly what happened here. But instead of identifying facts to support its conclusion, the government merely asserts that Galanos's threat was reasonably foreseeable because a "threat of death is inherently *foreseeable* ... if for no other reason than it is reasonably likely to be made in any bank robbery." Further, the government contends that what happened here was "consistent with" *United States v. Dorsey,* 209 F.3d 965 (7th Cir.2000). But in *Dorsey* the sentencing court's decision–that a co-defendant's use of a firearm and physical restraint of a person during a robbery were reasonably foreseeable–was supported by evidence that the defendant supplied money to be used for obtaining a gun and that he planned for the possibility that a person would have to be restrained during the robbery. *Id.* at 968. There is nothing close to that sort of evidence in this case.

The government's remaining arguments are unpersuasive. Thus, as in *Atwater,* the death threat *may* have been reasonably foreseeable to Slaughter, who at the time of the bank robbery had driven the getaway car for Galanos for three robberies in three days. But since there are no facts in the record to support imposing the two-level upward adjustment, we must VACATE the sentence and REMAND for

resentencing. In doing so, however, we note that even without the enhancement, Slaughter's sentencing range (70 to 87 months) includes the sentence–84 months–actually imposed. So Slaughter might very well get the same sentence, *sans* the enhancement, provided the court explains why the change in offense level did not impact the term imposed. *See United States v. Hoover,* 246 F.3d 1054, 1062 (7th Cir.2001).