**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 09-4768**

_____

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

ABDALLAH HUSSEIN FAKIH, a/k/a Abdullah Fakih,

                Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Richard L. Voorhees, District Judge.  (5:08-cr-00021-RLV-DCK-4)

_____

Argued:  March 23, 2011          Decided:  April 19, 2011

_____

Before MOTZ and WYNN, Circuit Judges, and Ronald Lee GILMAN, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Matthew Segal, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:** Claire J. Rauscher, Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, Cecilia Oseguera, Emily Marroquin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anne M. Tompkins, United States Attorney, Adam Morris, Assistant United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Abdallah Hussein Fakih of bank robbery and aiding and abetting the same, in violation of 18 U.S.C. §§ 2113(a) and 2, and of armed bank robbery and aiding and abetting the same, in violation of 18 U.S.C. §§ 2113(d) and 2. The district court sentenced Fakih to a 235-month term of imprisonment on each count, to be served concurrently, followed by three years of supervised release. Fakih appeals, challenging both his convictions and sentence. For the reasons that follow, we affirm.

## I.

On September 26, 2007, Demond Dixon ("Demond"), William Donald Dixon ("Donnie"), and Anthony Fleetwood robbed the Bank of America in Denver, North Carolina. Each man, armed with a gun, entered the premises, held the tellers and customers at gunpoint, threatened to kill them, robbed the bank, and left. The police spotted the robbers, who in response ditched the money and some belongings (including a pair of gloves), and fled. The three robbers subsequently broke into the house of Jimmy Woods, forced him at gunpoint into his van, and attempted to escape. After Mr. Woods somehow jumped out of the van, the robbers crashed and the police then apprehended them.

All three robbers testified to Fakih's substantial involvement in the crime. Indeed, all three testified that the robbery was Fakih's idea. According to them, Fakih, who in 2007 worked with Demond at a Fuel Pizza Café, proposed to Demond and his brother, Donnie, that they all rob a bank. Fakih held himself out as having particularized knowledge of banks, explaining that his father had worked at a bank.

On the day prior to the robbery, Fakih picked Donnie up at a Charlotte bus terminal after Donnie rode down from Philadelphia. Fakih put Donnie up in a hotel room for the night. At approximately the same time, Demond and his girlfriend, Eurania Young, picked Fleetwood up in Georgia and they drove together to North Carolina to join the others. Fleetwood's girlfriend, Valnissi Jackson, also met up with the group.

Shortly before the robbery, Fakih, the Dixon brothers, Fleetwood, Young, and Jackson met at a BP Mini Mart in Denver, North Carolina. The Government introduced surveillance video showing Fakih's BMW and Jackson's gray PT Cruiser parked at the gas station. While there, anticipating the eventual bank robbery, Fakih said to the group: "Are y'all ready to do this?"

Then, Fakih left the group and went to case the bank. He entered the bank at 10:51 a.m., fumbled with his wallet for less than a minute, and then left. The bank tellers, who testified

at trial, did not recognize Fakih as a regular customer and did not speak to him. They viewed his behavior as odd, but did not regard it as presaging a bank robbery.

After casing the bank, Fakih returned to the group waiting at the BP Mini Mart and gave the men the "green light" to proceed with the robbery, specifically noting the lack of a security guard on the bank's premises. The plan was for Young and Jackson to drop off the Dixon brothers and Fleetwood at the bank, and, after they robbed it, Fakih would pick them up. The robbery occurred ten minutes after Fakih cased the bank.

As the designated getaway driver, Fakih waited in his car behind the bank. There, he encountered a police officer who asked if Fakih had seen anything suspicious; Fakih answered no. Fakih then drove away and never picked up the robbers, leaving them without a getaway driver. The three robbers were thus forced to run away from the bank; after they did so, they broke into Mr. Woods's house, Demond then called Fakih, but Fakih purported to renounce his involvement in the enterprise ("I don't know what you're talking about") and hung up on Demond.

When the police arrested Fakih, he waived his Miranda rights and agreed to answer questions related to the incident. He confirmed many of the facts described above (including his encounter with the police officer in the bank parking lot during the robbery) but did not admit to casing the bank or to any

other involvement in the robbery. Fakih proceeded to trial on the two counts of bank robbery and assault in the commission of a bank robbery. After a two-day trial, a jury deliberated for forty-minutes and then found Fakih guilty of both crimes. The district court sentenced Fakih to two 235-month terms of imprisonment, to run concurrently.

## II.

Fakih raises two challenges to his convictions. We reject both.

## A.

First, Fakih contends that the district court should have granted his motion for a mistrial after the prosecutor drew the jury's attention to Fakih's pre-trial detention.

Fakih premises this challenge on the following questions that the prosecutor asked Demond Dixon on redirect examination:

> Q: Okay. Before that time [i.e. when Demond first mentioned Fakih to the police], were you ever housed in the jail with [Fakih]?
>
> A: Yes, I was in Lincoln County with him.
>
> Q: So he was already under arrest.
>
> A: They came and got him, I think, a week after we got arrested.
>
> Q: So he was physically in jail in Lincoln County before you even --

At this point, defense counsel objected and moved for a mistrial, which the court denied. Instead, the court offered the defense a curative instruction, which defense counsel declined, fearing that it would draw undue attention to Fakih's pre-trial custody. Ultimately, the prosecutor promised to avoid this line of questioning in the future and, in fact, did so. Fakih now seeks reversal on the ground that the district court erred in denying his motion for a mistrial.

We review the denial of a motion for mistrial for abuse of discretion. United States v. Stockton, 349 F.3d 755, 762 (4th Cir. 2003). To determine abuse of discretion, we consider: (1) whether the prosecutor's remarks were improper and (2) whether the remarks "prejudicially affected defendant's substantial rights so as to deprive [him] of a fair trial." Id. Since we have previously held that a prosecutor's questions about a defendant's pre-trial custody are "clearly improper," United States v. Bennett, 984 F.2d 597, 608 (4th Cir. 1993), we proceed to evaluate prejudice.

In assessing prejudice, we look to: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to established the guilt of the accused; and (4) whether the comments were deliberately placed

7

before the jury to divert attention to extraneous matters."  Id. (quoting United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983)).

As to the first prong, the degree of prejudice resulting from a single remark about a defendant's custody is "minimal." Bennett, 984 F.2d at 608.  This is so because "[i]n most trials, it is apparent that the defendant was arrested for the crime with which he has been charged.  The majority of criminal prosecutions are initiated by an arrest."  United States v. Harris, 703 F.2d 508, 512 (11th Cir. 1983).

With respect to the second prong, Fakih concedes that the improper remarks were not "extensive," but still contends they were not isolated.  See Appellant's Br. at 23.  He is mistaken. In Bennett, we considered a remark about pre-trial custody "isolated" where the "government never raised the matter again and did not refer to it in closing argument."  984 F.2d at 608. This holding compels the conclusion that the improper remarks in this case were also isolated, especially because the prosecutor promised not to ask another question about Fakih's pre-trial custody and even offered to ask a "final question" to "get away

from" the subject. The prosecutor never again mentioned Fakih's custody, not even in closing argument.[*]

As to the third prong, the Government offered overwhelming evidence to support the charges against Fakih. Specifically, it offered the following evidence: (1) four witnesses (Demond, Donnie, Fleetwood, and Young) testified to Fakih's substantial involvement in the crime; (2) surveillance footage showed Fakih at the bank and showed his car at the BP Mini Mart with the car that dropped the robbers off; (3) phone records showed that Fakih called Jackson about 50 times; (4) a pair of gloves found in Fleetwood's pants matched gloves found in a box in Fakih's car; (5) a police officer testified as to his encounter with Fakih near the bank's premises at the time of the robbery; and (6) Fakih himself admitted to authorities his presence at the scene of the robbery at the time it occurred and his meeting with the Dixon brothers at the BP Mini Mart.

---

[*] At oral argument, Fakih's counsel suggested that the prosecutor elicited an additional reference to Fakih's pre-trial custody. The record does not bear this out. When the prosecutor asked Fleetwood whether he had "any contact with [Fakih] since the day of the bank robbery," Fleetwood replied: "No. They had us in the same pod together, though." The prosecutor subsequently clarified his question: "Well, I mean outside." Fleetwood responded, "Oh, no, sir." Fakih failed to object to Fleetwood's answer at trial and it is clear that this remark -- initiated by Fleetwood as an after-thought to his answer to a proper question from the prosecutor -- was not a product of the prosecutor's improper questioning.

9

Finally, as to the fourth prong, the prosecutor did not deliberately attempt to divert attention to extraneous matters. Rather, the prosecutor sought to rebut the defense's cross-examination by suggesting that Demond may have fabricated his story together with Fleetwood and his brother Donnie. Thus, this prong also weighs in favor of the Government.

Accordingly, the district court did not abuse its discretion when it denied Fakih's motion for a mistrial.

B.

Fakih's second challenge to his conviction rests on the contention that the district court plainly erred in permitting the prosecutor to mention the box of gloves found in Fakih's car without admitting the box into evidence.

At oral argument, however, the Government alerted us to an exhibit list showing that the prosecutor had admitted as exhibit nine a "box of blue latex gloves" found in Fakih's car on the second day of trial. Thus, Fakih's argument rests on a factual premise -- that the prosecutor failed to admit the box of gloves into evidence -- that was proven false.

Moreover, even if the prosecution had failed to introduce the box of gloves into evidence, Fakih's argument would fail. The officer who searched Fakih's car testified that he found a box of rubber gloves in the trunk, and Fleetwood testified that he obtained the gloves from the inside of Fakih's car. It is

10

not error for a prosecutor to refer to evidence (including a box of gloves) in closing argument where witnesses have testified as to its existence and location.

                                III.

Fakih next contends that the district court procedurally erred in sentencing him.  He argues that the court erred in two respects.

                                 A.

The Presentence Report (PSR) states that Donnie Dixon told authorities "Fakih had two guns, a 9 mm and a .45 Ruger, and that he gave them to Demond" Dixon before the robbery.  At sentencing, the district court relied on this fact, as supported by the PSR, to find that it was reasonably foreseeable to Fakih that the robbers, in attempting to escape, would injure, abduct, and carjack Mr. Woods.

Fakih now asserts that the district court procedurally erred by crediting the finding that Fakih "armed" the robbers in the PSR.  He cites our holding in United States v. Carter that, "[p]rocedural errors include . . . selecting a sentence based on clearly erroneous facts."  564 F.3d 325, 328 (4th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  He contends that the finding that he armed the robbers was clearly

                                 11

erroneous because no evidence at trial supported it. The argument fails.

Fakih did not offer any evidence to rebut the finding in the PSR. Instead, he objected, in very general terms, to "those paragraphs that do not comport with the evidence at trial." A "mere objection to the finding in a presentence report is not sufficient." United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). Rather, the "defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." Id.

Here, Fakih lodged a "mere objection" and failed to rebut this finding at sentencing with evidence of its unreliability or inaccuracy. Accordingly, we cannot conclude that the sentencing court's finding is clearly erroneous. Moreover, even though evidence at trial did not show that Fakih armed the robbers, the absence of evidence at trial does not in itself establish that Fakih did not arm them. Because Fakih was silent as to the accuracy of this finding (which was based on the PSR) at sentencing, the district court could accept it as undisputed. See United States v. Revels, 455 F.3d 448, 451 n.2 (4th Cir. 2006) (where defendant is silent on a specific fact supported in the PSR, such fact is undisputed).

12

B.

Finally, Fakih contends that the district court procedurally erred by enhancing his sentence by two points for the carjacking of Mr. Woods. See U.S.S.G. § 2B3.1(b)(5).

Of course, the sentencing judge may enhance a defendant's sentence for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Fakih does not dispute that "others" carjacked Mr. Woods "in furtherance of the jointly undertaken criminal activity." Thus, Fakih's argument rests on whether the carjacking was "reasonably foreseeable" to him.

At sentencing, the district court explained its rationale for finding that the carjacking was reasonably foreseeable to Fakih as follows:

> The acts that occurred in relation to the getaway were completely foreseeable and exactly what you would expect of people trying to flee a bank with money. And to the extent they became involved in a carjacking, it may be that the defendant's failure to show up to take them away from the scene at the bank might have contributed to that, but that would be speculation. The fact is that their activities were directly foreseeable to someone who fostered, set up, aided and abetted and participated in a robbery by bringing together the various participants, seeing to its they were delivered to the scene and arming them.

We review a "reasonable foreseeability" determination for clear error. United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993). Fakih contends that it was clear error for the

13

court to rely on "unsupported assumptions about bank robberies in general, as opposed to relying on the particulars of this case." Appellant's Br. at 32.

Fakih bases his argument on a single case, United States v. Atwater, 272 F.3d 511 (7th Cir. 2001). There, the Seventh Circuit vacated a sentence where the district court rested a reasonable-foreseeability finding solely on a false intuition: "I have never heard of a bank robbery without a firearm." Id. at 512. In vacating the sentence, the court reasoned that, in fact, many bank robberies occur without a firearm and the district court needed to rely on something particular about the bank robbery in question to support its reasonable-foreseeability finding. Id.

Fakih's case is a far cry from Atwater. Here, the district court supported the reasonable-foreseeability finding based on the particular circumstances of Fakih's involvement in this bank robbery, not bank robberies in general. Thus, the court found that Fakih "set up" and "fostered" the bank robbery as well as "delivered" and "armed" the other bank robbers. We see no "unsupported assumptions about bank robberies" from the sentencing judge's particularized assessment of Fakih's orchestration of the robbery and participation in it. Moreover, since Atwater, the Seventh Circuit has upheld a reasonable-foreseeability finding of a co-defendant's carjacking where the

14

district court relied on the defendant's substantial involvement in the conspiracy.  See United States v. Williams, 553 F.3d 1073, 1082 (7th Cir. 2009).  This case is much closer to Williams than to Atwater.  Accordingly, we reject Fakih's challenges to his sentence.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.