FILED
United States Court of Appeals
Tenth Circuit

November 16, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MOISES REYES-BOJORQUEZ,

     Defendant-Appellant.

No. 07-2051
(D.Ct. No. CR-05-2458-JC)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

Appellant Moises Reyes-Bojorquez pled guilty to one count of conspiracy to possess with intent to distribute more than one kilogram of heroin within one thousand feet of real property comprising a school or playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 856(a)(1), 856(a)(2), and 860(a). He now appeals his 120-month sentence, arguing the district court erred in: 1) failing to apply a two-level "safety valve" reduction pursuant to 18 U.S.C.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 3553(f) and United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.")

§ 5C1.2; and 2) failing to make "meaningful factual findings" in denying the

reduction. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28

U.S.C. § 1291 and affirm Mr. Reyes-Bojorquez's sentence.


I. Factual and Procedural Background

From approximately September 2004 through November 2005, the Drug

Enforcement Agency (DEA) participated in a multi-district investigation of a

heroin trafficking ring involving Mexican heroin producers who recruited

Mexican nationals to participate in heroin distribution organizations in several

United States cities, including Albuquerque, New Mexico.[1] Information

corroborated by border patrol records established Mr. Reyes-Bojorquez traveled

from Mexico to the United States in July 2005. On October 3, 2005, DEA agents

investigating the Albuquerque organization arranged a traffic stop for the purpose

of identifying two individuals, including one referred to as "Junior," who acted as

couriers with the organization. One of the individuals involved in the traffic stop

---

[1] Background information in the record included information from investigative reports prepared by DEA agents and recounted in the presentence report as well as sworn agent affidavits, sworn accounts of co-conspirator debriefing statements, transcripts of recorded telephone calls, and copies of photographs. To the extent Mr. Reyes-Bojorquez objected to certain facts in the presentence report, the district court overruled those objections, relying on the government's memoranda, which included attached affidavits and evidence rebutting Mr. Reyes-Bojorquez's unsupported factual assertions, which we discuss hereafter.

was Mr. Reyes-Bojorquez, whom agents learned went by the nickname "Junior."

Over the next several days, agents observed Mr. Reyes-Bojorquez participate in drug deals. His participation in these drug deals was corroborated through the monitoring of a dispatch phone used to contact Mr. Reyes-Bojorquez and co-conspirators who identified him as an active street courier for the organization. During some of these transactions, Mr. Reyes-Bojorquez was observed training another individual as a courier for the organization, as later confirmed by co-conspirators.

On October 18 and 19, 2005, following the arrest of two Albuquerque organization members, Mr. Reyes-Bojorquez acted as the organization's dispatcher, using the dispatch phone for taking orders and dispatching himself and another individual for the purpose of conducting drug deals. On October 21, 2005, following the arrest of five more organization members, DEA agents executed a search warrant at the organization's main stash house, located within one thousand feet of a park's playground, where they found more than a kilogram of heroin packaged in individual ounces; agents also found items tying various members of the organization to that address, including Mr. Reyes-Bojorquez's cell phone and a ledger with his name on it. On the same day, agents executed a search warrant at an apartment, located within one thousand feet of a middle

school and associated with the organization, where they found balloons filled with heroin and other drug-related contraband.  On November 15, 2005, agents arrested Mr. Reyes-Bojorquez, the manager, and two other members of the Albuquerque heroin organization.

Following two prior federal indictments, a grand jury issued a second superseding indictment on August 8, 2006, naming Mr. Reyes-Bojorquez and eight co-defendants in the drug conspiracy.  Mr. Reyes-Bojorquez was named in nine counts of the indictment, including count one for conspiracy to possess with intent to distribute more than one kilogram of heroin within one thousand feet of real property comprising a school or playground, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 856(a)(1), 856(a)(2), and 860(a).  On August 22, 2006, Mr. Reyes-Bojorquez pled guilty to count one pursuant to a plea agreement.

As part of the plea agreement, Mr. Reyes-Bojorquez stipulated, in part, that he:  1) conspired with others to possess with intent to distribute more than one kilogram of heroin within one thousand feet of a school or playground; 2) had direct personal knowledge of, or personally handled, between one and three kilograms of heroin; 3) maintained premises at both the stash house and the apartment searched, which are both within one thousand feet of a school or playground, and also maintained premises at another apartment subsequently

-4-

rented in conjunction with the organization; 4) conspired with others to possess with intent to distribute approximately 34.38 net grams of heroin at the apartment searched; and 5) conspired with others to possess with intent to distribute approximately 37.2 net grams of heroin at the newly-rented apartment. The government and Mr. Reyes-Bojorquez also stipulated:

> Pursuant to U.S.S.G. § 5C1.2, the Defendant may be eligible for the safety valve provisions set forth at 18 U.S.C. § 3553(f). If the Defendant's eligibility is established, the Defendant would be entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines. *This reduction depends on the Defendant truthfully providing to the government, before sentencing, all information and evidence concerning the offenses that were part of the same course of conduct underlying this agreement.*

R., Vol. 1, Doc. 193 at 5 (¶ 9(d)). (Emphasis added.)

Following the plea hearing, a probation officer prepared a presentence report, calculating Mr. Reyes-Bojorquez's base offense level at 34, which, together with a three-level reduction for acceptance of responsibility, resulted in a total offense level of 31. An offense level of 31, together with Mr. Reyes-Bojorquez's criminal history category of I, resulted in a Guidelines range of 108 to 135 months imprisonment. However, because the statute of conviction for the offense required a minimum sentence of ten years imprisonment, the probation officer calculated the final Guidelines range at 120 to 135 months imprisonment. The presentence report did not recommend applying a safety valve reduction,

stating Mr. Reyes-Bojorquez had not provided all the information and evidence he had concerning the instant offense.

In making his objections to the presentence report, Mr. Reyes-Bojorquez contested certain facts based on the premise agents confused him with co-conspirators.[2]  In addition, he argued he qualified for the two-level "safety valve" reduction referenced in the plea agreement because he 1) adequately debriefed the government by truthfully providing it with information about the Albuquerque heroin organization, and 2) was not an organizer, leader, manager, or supervisor of others, but acted as a "minimal participant" in the conspiracy.  In support of his contention he qualified as a "minimal participant," Mr. Reyes-Bojorquez claimed, in part, that:  1) he was a "trainee courier" learning his duties within the organization at the time of his involvement; 2) no evidence established he

---

[2]  In his first memorandum objecting to the presentence report, Mr. Reyes-Bojorquez only generally contested facts regarding his misidentification claims and explicitly identified objections to only two paragraphs in the presentence report which concerned the assessed base offense level and the recommendation not to provide a role adjustment, to which the government responded.  According to the presentence report, Mr. Reyes-Bojorquez filed with the district court a second memorandum specifically identifying the portions of the presentence report to which he objected, and to which the government again responded.  However, Mr. Reyes-Bojorquez did not submit his second set of objections to the probation officer for his response or into the appeal record for our review.  While we generally require a defendant to provide all documents on which his appeal is based in order to render a decision, we are able, in this case, to address his appeal based on his first round of general objections and the government's responsive memorandum extensively identifying the specific facts to which Mr. Reyes-Bojorquez objected in his second set of objections.

directed anyone involved in the conspiracy; 3) no photos showed he handled drugs or money, nor were any drugs or money found on his person; 4) several other individuals were nicknamed "Junior" and each had a share of calls attributed to "Junior" in the conspiracy; and 5) many of the defendants looked remarkably alike, spoke with the same dialect, and went by the same nickname, "Junior," causing agents to mistakenly attribute certain actions or words to him. In making these contentions, Mr. Reyes-Bojorquez did not submit an affidavit in support of his argument, but instead attempted to establish agents misidentified him by submitting a copy of a few of the government's photographs; a transcript of one of its monitored phone calls; an unsigned, unsworn document identifying others as "Junior"; and the government's application to intercept wire communications.

In response, the government filed two memoranda. In the first, it explained it did not contest Mr. Reyes-Bojorquez was a minimal participant, but that the safety valve reduction should not apply because he lied about his involvement in the drug trafficking organization as shown, in part, by his denial he sold heroin or was anything other than a trainee courier when, in fact, evidence established he delivered heroin on several occasions, trained another individual to be a courier, and acted as a dispatcher. In the second, responsive memorandum, the government addressed Mr. Reyes-Bojorquez's specific factual objections to the

presence report and, in so doing, included sworn agent affidavits establishing those investigating the drug operation never actually confused Mr. Reyes-Bojorquez with others, either by nickname, voice, or physical appearance, and only mistakenly misidentified others as him a few times in written reports, as relied on in the presence report. To the extent misstatements or clerical errors existed, agents stated Mr. Reyes-Bojorquez was the individual meant to be identified rather than those mistakenly identified. In addition, the government submitted photographs of both Mr. Reyes-Bojorquez and the individuals misidentified as him, as well as surveillance photographs, for the purpose of showing it was Mr. Reyes-Bojorquez involved in the courier transactions at issue, and not any other person.

At the sentencing hearing, the district court addressed Mr. Reyes-Bojorquez's objections to the presence report, stating, "[a]fter reviewing the government's sentencing memorandum and response to specific [objections][3], [and] various paragraphs in the PSR, the court overrules these objections and finds that the government has adequately addressed each [in its] memorandum." R., Vol. 3 at 4-5. The district court then expressly declined to apply the safety valve reduction in calculating his sentence. Prior to imposing a sentence, the

---

[3] At oral argument, Mr. Reyes-Bojorquez's counsel acknowledged that the district court used, or meant to use, the words "specific objections," although the transcript reads "specific protections."

district court stated it had considered the Guidelines applications and factors set forth in 18 U.S.C. § 3553(a).  It then imposed a term of 120 months imprisonment, which is the minimum statutory term of imprisonment for the instant offense and at the low end of the 120- to 135-month Guidelines range.

## II.  Discussion

Mr. Reyes-Bojorquez now appeals his sentence, contending the district court erred in failing to:  1) apply the safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and 2) make "meaningful factual findings" on his eligibility for such a safety valve reduction.  In support of his contentions, Mr. Reyes-Bojorquez asserts the facts set forth in his memoranda opposing the presentence report demonstrate his eligibility for a safety valve reduction and that the government did not present any evidence at sentencing to contradict the information in his memoranda or factually support its contrary arguments.  As a result, Mr. Reyes-Bojorquez argues he has met his burden of proving his eligibility for a safety valve reduction.  With regard to the district court's failure to make "meaningful factual findings" on his safety valve eligibility, Mr. Reyes-Bojorquez suggests the district court's "very short generic statement" establishes it did not consider or rule on his objections, resolve any factual disputes, or provide sufficient clarity for him to "respond to the court's denial of the safety valve" or "advance cogent and succinct arguments relating to any contested

facts." Apt. Br. at 10-12. In addition, he suggests the district court's failure to explain its rejection of his "safety valve" argument in conjunction with the § 3553(a) sentencing factors resulted in an unreasonable sentence.

### A. Safety Valve Reduction

We begin our discussion by examining whether the district court erroneously found Mr. Reyes-Bojorquez did not qualify for a safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. When reviewing a district court's application of the Guidelines in calculating a sentence, including the application of § 5C1.2, we review legal questions *de novo* and any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *See United States v. Patron-Montano*, 223 F.3d 1184, 1188 (10th Cir. 2000). "A district court's factual finding is clearly erroneous only if it is without factual support in the record or if this court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted). Since the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), we have clarified that in reviewing a defendant's sentence, we review the district court's sentence for abuse of discretion, asking whether it is reasonable under the 18 U.S.C. § 3553(a) sentencing factors. *See United States v. Garcia-Lara*, 499 F.3d 1133, 1135 (10th Cir. 2007). Thus, we employ the abuse of discretion standard by reviewing a

district court's factual findings for clear error and defer to the district court's exercise of discretion within the bounds of reasonableness. *See id.* at 1136. We require reasonableness in two respects – "the length of the sentence, as well as the *method* by which the sentence was calculated." *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006) (*per curiam*). A procedurally reasonable sentence is one that is "calculated utilizing a legitimate method." *United States v. Cage,* 451 F.3d 585, 591 (10th Cir. 2006). "Even if a sentence is calculated properly, i.e. the Guidelines were properly applied and the district court clearly considered the § 3553(a) factors and explained its reasoning, a sentence can yet be unreasonable." *Id.*

Applying this standard of review, we turn directly to the legal principles applicable to Mr. Reyes-Bojorquez's safety valve claim. By statute, pursuant to 18 U.S.C. § 3553(f), the district court "shall impose a sentence pursuant to [the] guidelines ... without regard to any statutory minimum sentence" if the court finds at sentencing that the defendant meets certain safety valve criteria.[4] 18 U.S.C.

---

[4] To qualify for a safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the following criteria apply: 1) the defendant does not have more than one criminal history point; 2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; 3) the offense did not result in death or serious bodily injury to any person; 4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise; and 5) not later than the time of

(continued...)

§ 3553(f); *see also* U.S.S.G. § 5C1.2 (relying on the same criteria for the purpose of granting a below-mandatory minimum sentence).  Here, the only contested criterion is whether Mr. Reyes-Bojorquez truthfully provided to the government all information and evidence he possessed concerning his conspiracy offense.[5] *See* 18 U.S.C. § 3553(f)(5) *and* U.S.S.G. § 5C1.2(a)(5).  This criterion requires truthful disclosure, regardless of whether the information is deemed relevant or useful to the government's investigation.  *See United States v. Acosta-Olivas*, 71 F.3d 375, 377, 379 (10th Cir. 1995).  The burden is on Mr. Reyes-Bojorquez to show by a preponderance of the evidence he met this criterion.  *See United States v. Stephenson,* 452 F.3d 1173, 1179 (10th Cir. 2006).  In making factual determinations, "[i]t is well established that the sentencing court is entitled to rely on uncontested facts contained in the PSR for certain sentencing purposes." *United States v. Mateo*, 471 F.3d 1162, 1166-67 (10th Cir. 2006), *cert. denied,* 127 S. Ct. 2890 (2007).

In this case, the district court's determination Mr. Reyes-Bojorquez did not

---

[4](...continued)
the sentencing hearing, the defendant has truthfully provided to the government all information and evidence he has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. *See generally* 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(a)(1)-(5).

[5]  Because the government does not contest the other § 3553(f) criteria, we will not address them in the disposition of this appeal.

qualify for a safety valve reduction is supported by the record. In preparing the factual findings for the presentence report, the probation officer relied on government investigation reports, which were corroborated by agent affidavits, photographs, and recorded telephone transcripts, and established Mr. Reyes-Bojorquez delivered heroin on several occasions, trained another individual to be a courier, and acted as a dispatcher. This evidence shows Mr. Reyes-Bojorquez prevaricated about his participation in the drug trafficking operation when he claimed he was only a "trainee courier," did not direct anyone in the conspiracy, and did not handle drugs or money. Indeed, Mr. Reyes-Bojorquez admitted in his plea agreement he had direct personal knowledge of, or personally handled, between one and three kilograms of heroin.

In addition, Mr. Reyes-Bojorquez did not object to many of the factual findings in the presentence report implicating him as an active street courier who handled heroin and, instead, disputed only those facts relating to his alleged misidentification claims and attempted to attribute certain actions to others in the conspiracy. To rebut these claims, the government submitted sworn agent affidavits establishing agents did not confuse Mr. Reyes-Bojorquez with anyone else. In turn, at no time did Mr. Reyes-Bojorquez support his claims with a sworn affidavit or submit what we perceive to be mitigating evidence. Instead, a review of the record shows overwhelming evidence supported the factual findings in the

-13-

presentence report, including those objected to by Mr. Reyes-Bojorquez.

Based on these circumstances, we must reject Mr. Reyes-Bojorquez's bald assertions he met his burden of establishing his eligibility for the safety valve reduction and that the government failed to present evidence contradicting his contentions. For the same reasons, we cannot say the district court's determination Mr. Reyes-Bojorquez did not qualify for the safety valve reduction lacks factual support or has otherwise left us with a definite and firm conviction a mistake has been made for the purpose of establishing clear error. *See Patron-Montano*, 223 F.3d at 1188. We therefore conclude the district court's failure to apply such a reduction was not an abuse of discretion or in any way unreasonable.

B. Explanation in Conjunction with § 3553(a) Factors

Turning to the § 3553(a) sentencing factors, Mr. Reyes-Bojorquez complains the district court imposed an unreasonable sentence by failing to fully explain its reasons for denying his safety valve reduction request. The government argues that because Mr. Reyes-Bojorquez did not make this argument during the sentencing hearing or otherwise request the district court to provide further explanation, we should review the issue for plain error only. Mr. Reyes-Bojorquez does not contest the application of plain error review but contends the district court's failure to explain his sentence, consider his objections to the

presentence report, or expressly overrule his objections constitutes plain error based on a violation of his substantial rights and a miscarriage of justice. He fails, however, to explain with any specificity how his substantial rights were violated or a miscarriage of justice occurred.

We have held that when, like here, "the defendant fails to object to the method by which the sentence was determined, such as a claim ... that the court did not adequately explain the sentence with reference to the factors set forth in 18 U.S.C. § 3553(a), we review only for plain error." *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006) (relying on *United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 3043 (2007)), *cert. denied,* 127 S. Ct. 3054 (2007). Plain error arises when 1) an error occurs, 2) that is plain, which 3) affects substantial rights, and which 4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Lopez-Flores*, 444 F.3d at 1222. Because the components required for plain error are disjunctive, we need not continue our analysis if we determine that under the first component no error occurred.

Turning to the issue of the district court's explanation of the sentence under the § 3553(a) factors, we have held "[t]here is no question that, in addition to guiding our reasonableness review on appeal, the sentencing factors set forth in

18 U.S.C. § 3553(a) must be considered by the district court itself when imposing a sentence." *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1115 (10th Cir. 2006). However, "[w]hen the defendant has not raised any substantial contentions concerning non-Guidelines § 3553(a) factors and the district court imposes a sentence within the Guidelines range, our post-*Booker* precedents do not require the court to explain on the record how the § 3553(a) factors justify the sentence." *Lopez-Flores*, 444 F.3d at 1222. On the other hand:

> Where a defendant has raised a nonfrivolous argument that the § 3553(a) factors warrant a below-Guidelines sentence and has expressly requested such a sentence, we must be able to discern from the record that the sentencing judge did not rest on the guidelines alone, but considered whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors.

*Sanchez-Juarez*, 446 F.3d at 1117 (quotation marks and citation omitted).

In reconciling *Lopez-Flores* and *Sanchez-Juarez*, this court has explained that when a district court imposes a sentence which falls within the range suggested by the Guidelines, as it did in *Lopez-Flores*, § 3553(a) requires the court to provide only a general statement of the reasons for imposition of the particular sentence. *See United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199, 1202 (10th Cir.), *cert. denied,* 128 S. Ct. 113 (2007). While a detailed sentencing explanation may prove beneficial in some instances, it is nonmandatory when imposing a sentence which falls within the Guidelines range. *Id.* at 1202.

In this case, it is evident the district court considered Mr. Reyes-Bojorquez's objections to the presentence report when it stated it had reviewed the government's sentencing memorandum and response to Mr. Reyes-Bojorquez's specific objections and then stated it overruled those objections, finding the government had adequately addressed each in its memorandum and responsive memorandum. It would be fallacious to assume the district court could find the government adequately addressed each objection without knowing or considering what those objections were. Similarly, Mr. Reyes-Bojorquez's contention the district court did not expressly overrule his objections is nonsensical, in light of the district court's express statement it was overruling those objections. It is also apparent the district court, for judicial economy, simply relied on or adopted the government's reasoning, contained in its memorandum and responsive memorandum, to overrule Mr. Reyes-Bojorquez's objections – all of which related to his alleged truthful disclosure in support of a safety valve reduction. Because Mr. Reyes-Bojorquez received copies of the government's memoranda, he received sufficient clarity from the district court as to its reasons for overruling his objections and denying his safety valve reduction request.

As to the § 3553(a) factors, because the district court imposed a sentence which falls within the range suggested by the Guidelines, it was only required to

provide a general statement of the reasons for imposition of that particular sentence. *See Ruiz-Terrazas*, 477 F.3d at 1199. In addition, Mr. Reyes-Bojorquez did not raise any substantial contentions concerning the § 3553(a) factors in making his objections to the presentence report, either in his written objections or at the sentencing hearing. Instead, Mr. Reyes-Bojorquez cursorily pointed out that the district court must consider the § 3553(a) sentencing factors, but did not articulate how any one of the seven § 3553(a) factors applied for the purpose of lowering his sentence. Consequently, because Mr. Reyes-Bojorquez did not raise any substantial contentions concerning the § 3553(a) factors, and the district court imposed a sentence within the Guidelines range, our post-*Booker* precedents did not require it to explain on the record how the § 3553(a) factors justified the sentence. *See Lopez-Flores*, 444 F.3d at 1222.

As a result, the district court's express statement it considered the factors set forth in 18 U.S.C. § 3553(a), together with its explicit rejection of Mr. Reyes-Bojorquez's safety valve request and other objections on the grounds set forth in the government's memoranda, comprise sufficient explanation in this instance. While a more detailed sentencing explanation would have proven beneficial in dispelling any confusion Mr. Reyes-Bojorquez may have had over the sentence he received, it was nonmandatory under the circumstances. *See Ruiz-Terrazas*, 477 F.3d at 1202. Having found no error, we need not address the remaining

-18-

disjunctive plain error components.

C. Unreasonable Sentence Length

Finally, for the first time on appeal, in his reply brief, Mr. Reyes-Bojorquez contends his sentence is unreasonable in length under § 3553(a) because the kingpin of his drug trafficking organization received the same sentence as a street-level courier. However, he does not clarify whether he is the street-level courier referenced, identify the length of the sentence the co-conspirator received, or submit for our review the record document to which he refers in support of his argument.

As a rule, this court will not address issues raised for the first time in a reply brief on appeal. *See United States v. Beckstead*, 500 F.3d 1154, 1162-63 (10th Cir. 2007). Even if we addressed this issue, we have determined a presumption of reasonableness attaches to a sentence, like here, which is within the correctly-calculated Guidelines range. *See Kristl*, 437 F.3d at 1053-54. "This is a deferential standard that either the defendant or the government may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Id.* at 1054. In this case, Mr. Reyes-Bojorquez has not met such a burden or otherwise demonstrated his sentence is unreasonable in conjunction with the 18 U.S.C. § 3553(a) sentencing factors.

### III.  Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Reyes-Bojorquez's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge